Adam R. Fox (State Bar No. 220584)
Anne Choi Goodwin (State Bar No. 216244)
SQUIRE, SANDERS & DEMPSEY L.L.P.
555 South Flower Street, 31st Floor
Los Angeles, CA  90071-2300
Telephone:  +1.213.624.2500
Facsimile:   +1.213.623.4581
afox@ssd.com
agoodwin@ssd.com

James P. Murphy (admitted *Pro Hac Vice*)
SQUIRE, SANDERS & DEMPSEY L.L.P.
1201 Pennsylvania Ave., N.W., Ste. 500
Washington, DC  20004-2401
Telephone:  +1.202.626.6793
Facsimile:   +1.202.626.6780
jmurphy@ssd.com

W. Mark Lanier (admitted *Pro Hac Vice*)
THE LANIER LAW FIRM
6810 FM 1960 West
Houston, TX 77069
Telephone:  +1.713.659.5200
Facsimile:   +1.713.659.2204
wml@lanierlawfirm.com

Attorneys for The Sugar Association, Inc.; American
Sugar Refining, Inc.; C&H Sugar Company, Inc.;
Imperial Sugar Company; Rio Grande Valley Sugar
Growers, Inc.; Western Sugar Cooperative; and Qorvis
Communications, LLC

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

| | |
|---|---|
| THE SUGAR ASSOCIATION, INC., a Delaware corporation,<br><br>Plaintiff,<br><br>AMERICAN SUGAR REFINING, INC., a Delaware corporation; C&H SUGAR COMPANY, INC., a Delaware corporation; IMPERIAL SUGAR COMPANY, a Texas Corporation; RIO GRANDE VALLEY SUGAR GROWERS, INC., a Texas corporation; WESTERN SUGAR COOPERATIVE, a Colorado corporation | Case No.  CV 04-10077 DSF (RZX)<br><br>**PLAINTIFF'S, PLAINTIFF-INTERVENORS' AND COUNTERCLAIM-DEFENDANTS' MEMORANDUM OF CONTENTIONS OF FACT AND LAW**<br><br>Judge:  The Honorable Dale S. Fischer<br><br><u>Final Pretrial Conference</u><br>Date:          January 7, 2008<br>Time:          3:00 p.m.<br>Place:         Courtroom 840 |

Intervenor-Plaintiffs,

vs.

McNEIL-PPC, INC., a New Jersey corporation, McNEIL NUTRITIONALS, LLC, a Delaware Limited Liability Company, and DOES 1 through 10,

Defendants.

Counter-Claimants,

vs.

THE SUGAR ASSOCIATION, INC., a Delaware corporation, AMERICAN SUGAR REFINING, INC., a Delaware corporation; IMPERIAL SUGAR COMPANY, a Texas Corporation; RIO GRANDE VALLEY SUGAR GROWERS, INC., a Texas corporation; and QORVIS COMMUNICATIONS, LLC

Counterclaim-Defendants.

| Trial | |
|---|---|
| Date: | January 29, 2008 |
| Time: | 8:00 A.M. |
| Place: | Courtroom 840 |

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ........................................................................ 1

II.     CLAIMS AND DEFENSES ....................................................... 2

    A.   Sugar's Claim ................................................................ 2
    B.   McNeil's Affirmative Defenses .................................... 3
    C.   McNeil's Counterclaims ................................................ 5
    D.   Counterclaim-Defendants' Affirmative Defenses .......... 6

III.    CONTENTIONS OF FACT SUPPORTING SUGAR'S CLAIMS
      AND REFUTING MCNEIL'S COUNTERCLAIMS ................. 9

    A.   The Artificial Sweetener Splenda and Concerns About its Safety ....... 9
    B.   What McNeil Knew And Did Prior To Splenda's Launch ................ 11
    C.   What McNeil Knew And Did From 2000 Through 2002 ................ 12
    D.   What McNeil Knew And Did During 2003 And Beyond ................ 13
    E.   The Evolution of Splenda's Market and Product Focus in the
       United States ................................................................ 14
    F.   The Truth About Splenda Campaign .............................. 16

IV.     EVIDENTIARY ISSUES ........................................................ 17

V.      BIFURCATION OF ISSUES ................................................... 19

VI.     JURY TRIAL ......................................................................... 19

VII.    ATTORNEYS' FEES .............................................................. 19

VIII.   ABANDONMENT OF ISSUES ............................................... 20

SQUIRE, SANDERS &
DEMPSEY L.L.P.
555 South Flower Street, 31st Floor
os Angeles California 90071-2300

Pursuant to Local Rule 16-4, Plaintiff, Plaintiff-Intervenors, and Counterclaim-Defendants, The Sugar Association, Inc. ("Sugar Association"), American Sugar Refining, Inc. ("American Sugar"), Imperial Sugar Company ("Imperial"), Rio Grande Valley Sugar Growers, Inc. ("Rio Grande"), C&H Sugar Company, Inc. ("C&H"), Western Sugar Cooperative and Qorvis Communications, LLC ("Qorvis"), hereby submit their Memorandum of Contentions of Fact and Law.

## I.   __INTRODUCTION__

This case arises from the false and misleading advertising by Defendants McNeil-PPC, Inc. and McNeil Nutritionals, LLC (collectively referred to as "McNeil") of the artificial sweetener Splenda. The Plaintiff Sugar Association, an organization whose member companies are producers and growers of sugar in the United States, and the sugar producer Plaintiff-Intervenors, American Sugar, Imperial, Rio Grande, C&H, and Western Sugar,[1] have been harmed by McNeil's campaign.

McNeil has engaged in false advertising by making false, deceptive and/or misleading representations about Splenda in order to attract customers to purchase and consume Splenda, and to divert those customers away from their purchase and consumption of sugar.  Among other things, McNeil has falsely advertised that Splenda is "Made from sugar, so it tastes like sugar."  Sugar contends that through its advertising campaign, McNeil has willfully deceived consumers into believing that Splenda is natural, safe, contains sugar, and has the same taste as sugar without the calories.

Sugar seeks injunctive relief, requesting that McNeil be stopped from further false and/or misleading advertising of Splenda, trading on the commercial reputation, success and goodwill of sugar.  Plaintiff-Intervenors are also asking for

---

[1] Plaintiff and Plaintiff-Intervenors are collectively referred to as "Sugar".

SQUIRE, SANDERS &
DEMPSEY L.L.P.
355 South Flower Street, 31st Floor
Los Angeles, CA  90071-2300

- 1 -

PLAINTIFF'S, PLAINTIFF-INTERVENORS', AND
COUNTERCLAIM-DEFENDANTS' MEMORANDUM
OF CONTENTIONS OF FACT AND LAW

1  monetary damages for the harms suffered as a result of McNeil's false or
2  misleading advertising, and treble damages and attorney fees due to the exceptional
3  and willful conduct by McNeil in knowingly and intentionally making its false
4  and/or misleading claims about Splenda.

5      McNeil contends that it has not engaged in false or misleading advertising
6  and has countersued the Plaintiff Sugar Association and certain of the Plaintiff-
7  Intervenors (American Sugar, Imperial, and Rio Grande) as well as a company
8  known as Qorvis Communications, LLC (collectively referred to as the
9  "Counterclaim-Defendants"), asserting that McNeil has suffered economic harm
10  caused by the publicity of Sugar's lawsuit and certain public statements
11  Counterclaim-Defendants have made about Splenda.   McNeil claims that it is
12  entitled to injunctive relief and damages under its counterclaims.

## II.  CLAIMS AND DEFENSES

### A.  Sugar's Claim

15      Sugar has made a claim for False or Misleading Advertising in Violation of
16  the Lanham Act, 15 U.S.C. § 1125(a) against McNeil.

17      To successfully assert a Lanham Act Claim for false or misleading
18  advertising, Sugar must prove the following by a preponderance of the evidence:
19  (1) in commercial advertisements, the advertiser made either a false statement or a
20  misleading statement as to its own products or another's; (2) the statement actually
21  deceived or has the tendency to deceive a substantial segment of its audience; (3)
22  the deception is material, in that it is likely to influence purchasing decisions; (4)
23  the statements were made in interstate commerce or in such a way as to have an
24  impact on interstate commerce; and (5) there is a likelihood of injury to the plaintiff
25  in terms of declining sales, lost profits, injury to reputation, and/or loss of goodwill.
26  See 15 U.S.C. § 1125(a); *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134,
27  1139 (9th Cir. 1997); *Cook, Perkiss and Liehe, Inc. v. Northern Cal. Collection*
28  *Servs., Inc.*, 911 F.2d 242, 244 (9th Cir. 1990).  Further, the parties' have agreed to

SQUIRE, SANDERS &
DEMPSEY L.L.P.
433 South Flower Street  31st Floor
Los Angeles, CA  90071-2300

- 2 -

PLAINTIFF'S, PLAINTIFF-INTERVENORS', AND
COUNTERCLAIM-DEFENDANTS' MEMORANDUM
OF CONTENTIONS OF FACT AND LAW

stipulate that McNeil's Splenda advertising and marketing satisfies the interstate commerce element of the test.

## B.    McNeil's Affirmative Defenses

McNeil asserted the following affirmative defenses against Sugar in its Answers filed on July 7, 2006: (1) failure to state a claim; (2) laches; (3) waiver; (4) estoppel; (5) unclean hands; (6) statute of limitations; (7) First Amendment; (8) nonjoinder of parties; (9) not entitled to relief; (10); no damages; (11) no causation; and (12) failure to mitigate damages. McNeil also asserted the affirmative defenses of (1) lack of standing and (2) not a real party in interest solely against Plaintiff Sugar Association.[2]

Based on the parties' meet and confer discussions prior to filing the instant Memorandum, Sugar understands that McNeil will be abandoning the affirmative defenses of failure to state a claim, waiver, estoppel, statute of limitations, First Amendment, nonjoinder of parties, and not a real party in interest. Further, the parties understand that while pled as such, the issues of not entitled to relief, no damages, no causation, and failure to mitigate damages are not affirmative defenses, the right to introduce evidence at trial as to those issues has been reserved.

To establish McNeil's affirmative defense of laches, McNeil must prove that Sugar: (1) delayed in asserting its claim; (2) the delay was not reasonable or excusable; and (3) the delay has prejudiced McNeil. *See Jarrow Formulas, Inc. v. Nutrition Now, Inc.*, 304 F.3d 829, 835 (9th Cir. 2002); *Danjaq LLC v. Sony Corp.*, 263 F.3d 942, 952-55 (9th Cir. 1997); *see also, e.g.*, Mar. 2, 2007 Mem. and Op., *Merisant Co., Inc. v. McNeil Nutritionals*, No. 04-5504 at 16; *Solvay Pharms., Inc.*

---

[2] McNeil's affirmative defenses of lack of standing and not a real party in interest should be moot, as this Court April 13, 2005 ruling on McNeil's request for Judgment on the Pleadings Pursuant to Fed. R. Civ. P. 12(c) or, in the Alternative for Partial Summary Judgment Pursuant to Fed. R. Civ. P. 56(c) decided those issues near the outset of this litigation.

SQUIRE, SANDERS &
DEMPSEY L.L.P.
455 South Flower Street, 31st Floor
Los Angeles, CA 90071-2300

- 3 -

PLAINTIFF'S, PLAINTIFF-INTERVENORS', AND
COUNTERCLAIM-DEFENDANTS' MEMORANDUM
OF CONTENTIONS OF FACT AND LAW

1  *v. Global Pharms.*, 419 F. Supp. 2d 1133, 1141-43 (D. Minn. 2006).   Laches,
2  however, is not an available defense if McNeil intentionally set about to
3  deceive/confuse consumers.   *See, e.g., Jarrow Formulas, Inc. v. Nutrition Now,*
4  *Inc.*, 304 F.3d 829, 835 (9th Cir. 2002).

5       To establish McNeil's affirmative defense of unclean hands, McNeil will be
6  required to prove that Sugar engaged in willful and deceitful conduct that resulted
7  in prejudice to McNeil by clear and convincing evidence.   Sugar's alleged
8  misconduct or fraud must be intimately connected with its claim and of such a
9  prejudicial nature that it would be unfair to allow Sugar to assert its claim.   *See*
10  *Jarrow Formulas, Inc. v. Nutrition Now, Inc.*, 304 F.3d 829, 835 (9th Cir. 2002);
11  *Pfizer Inc. v. Int'l Rectifier Corp.*, 685 F.2d 357, 359 (9th Cir. 1982); *CrossTalk*
12  *Productions, Inc. v. Jacobson* (1998) 65 Cal. App. 4th 631, 639-643, 76 Cal. Rptr.
13  2d 615; *Unilogic, Inc. v. Burroughs Corp.* (1992) 10 Cal. App. 4th 612, 618-23, 12
14  Cal. Rptr. 2d 741; *Soon v. Beckman* (1965) 234 Cal. App. 2d 33, 36, 44 Cal. Rptr.
15  190; *Fibreboard Paper Products Corp. v. East Bay Union of Machinists* (1964) 227
16  Cal. App. 2d 675, 728, 39 Cal. Rptr. 64.

17       To prevail on the issue of not entitled to relief, McNeil must prove that Sugar
18  cannot recover the relief it seeks because it is not entitled to such relief.   *Southland*
19  *Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1145-1147 (9th Cir. 1997).

20       To prevail on the issue of no damages, McNeil must prove that based on the
21  totality of the circumstances, Sugar is not entitled to any just compensation.
22  *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1145-1146 (9th Cir.
23  1997).

24       To prevail on the issue of no causation, McNeil must prove its actions did not
25  cause the damage suffered by Sugar.   *Southland Sod Farms v. Stover Seed Co.*, 108
26  F.3d 1134, 1145-1146 (9th Cir. 1997).

27       To prevail on the issue of failure to mitigate damages, McNeil must prove
28  that Sugar (1) failed to use reasonable efforts to mitigate damages; and (2) the

SQUIRE, SANDERS &
DEMPSEY L.L.P.
333 South Flower Street, 31st Floor
Los Angeles, CA 90071-2300

- 4 -

PLAINTIFF'S, PLAINTIFF-INTERVENORS', AND
COUNTERCLAIM-DEFENDANTS' MEMORANDUM
OF CONTENTIONS OF FACT AND LAW

1    amount by which damages would have been mitigated.  *See* Manual of Model Jury

2    Instructions for the Ninth Circuit, Instruction 5.3 (2007 ed.).

3    **C.   McNeil's Counterclaims**

4        McNeil's counterclaims against Counterclaim-Defendants Sugar Association,

5    American Sugar, Imperial, Rio Grande, and Qorvis include: First Claim for False or

6    Misleading Advertising in Violation of the Lanham Act, 15 U.S.C. § 1125(a),

7    Second Claim for Unfair Competition under California State Law (Cal. Bus. &

8    Prof. Code § 17500 *et seq.*, and Cal. Bus. & Prof. Code § 17200 *et seq.*), and Third

9    Claim for Product Disparagement in Violation of the Common Law of the State of

10   California.

11       To successfully assert a Lanham Act Claim for false or misleading

12   advertising, McNeil must prove the following by a preponderance of the evidence:

13   (1) in commercial advertisements, the advertiser made either a false statement or a

14   misleading statement as to its own products or another's; (2) the statement actually

15   deceived or has the tendency to deceive a substantial segment of its audience; (3)

16   the deception is material, in that it is likely to influence purchasing decisions; (4)

17   the statements were made in interstate commerce or in such a way as to have an

18   impact on interstate commerce; and (5) there is a likelihood of injury to the plaintiff

19   in terms of declining sales, lost profits, injury to reputation, and/or loss of goodwill.

20   *See* 15 U.S.C. § 1125(a); *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134,

21   1139 (9th Cir. 1997); *Cook, Perkiss and Liehe, Inc. v. Northern Cal. Collection*

22   *Servs., Inc.*, 911 F.2d 242, 244 (9th Cir. 1990).

23       To successfully establish a claim for unfair competition under California

24   state law, McNeil must prove that it suffered injury in fact and thus has actually lost

25   money or property as a result of business acts or practices which are unlawful, or

26   unfair, or fraudulent. *Daghlian v. DeVry Univ., Inc.*, 461 F. Supp. 2d 1121, 1154-

27   55 (C.D. Cal. 2006).  A violation of the false advertising law, §§ 17500 *et seq.*,

28

SQUIRE, SANDERS &
DEMPSEY L.L.P.
455 South Flower Street, 31st Floor
Los Angeles, CA  90071-2300

PLAINTIFF'S, PLAINTIFF-INTERVENORS', AND
COUNTERCLAIM-DEFENDANTS' MEMORANDUM
OF CONTENTIONS OF FACT AND LAW

1  constitutes a violation of the unfair competition law, §§ 17200 *et seq.* *Daghlian*,

2  461 F. Supp. 2d at 1154-55.

3      To successfully establish a claim for common law product disparagement

4  McNeil must prove (1) Counterclaim-Defendants published a disparaging statement

5  about its product; (2) the statement was reasonably understood by one or more of

6  the persons to whom it was published to be a statement of fact of and concerning

7  the product; (3) the statement was false; (4) Counterclaim-Defendants published the

8  statement with express or implied malice; and (5) the publication of the statement

9  caused McNeil to suffer financial loss.  *See* Matthew Bender, 6-70A California

10  Forms of Jury Instruction, Elements of a Trade Libel Cause of Action, MB

11  7000A.01; *see also Cal. Scents v. Surco Prods.*, 406 F.3d 1102, 1109 (9th Cir.

12  2005); *Auvil v. CBS "60 Minutes"*, 67 F.3d 816, 820 (9th Cir. 1995).

13      **D.   Counterclaim-Defendants' Affirmative Defenses**

14      Counterclaim-Defendants' assert the following affirmative defenses:[3] Waiver

15  (Third Affirmative Defense); Unclean Hands (Fifth Affirmative Defense); First

16  Amendment/Noerr-Pennington (Seventh Affirmative Defense); Lack of Standing

17  (Eighth Affirmative Defense); Not Entitled to Relief (Tenth Affirmative Defense);

18  No Damages (Eleventh Affirmative Defense); No Causation (Twelfth Affirmative

19  Defense); and Failure to Mitigate Damages (Thirteenth Affirmative Defense).[4]

20      To establish the affirmative defense of waiver, Counterclaim-Defendants

21  must prove McNeil (1) voluntarily, (2) knowingly and (3) intentionally relinquished

22  or abandoned a known legal right, and it must do so by clear and convincing

23  _____

[3] As set forth in Section VIII (below), Counterclaim-Defendants abandon

24  certain affirmative defenses that were previously included in their Answer to
McNeil's counterclaims.

25      [4] As noted above, the parties understand that while pled as such, the issues of

26  not entitled to relief, no damages, no causation, and failure to mitigate damages are

27  not affirmative defenses, the right to introduce evidence at trial as to those issues
has been reserved.

28

SQUIRE, SANDERS &
DEMPSEY L.L.P.
355 South Flower Street, 31st Floor
Los Angeles, CA  90071-2300

- 6 -

PLAINTIFF'S, PLAINTIFF-INTERVENORS', AND
COUNTERCLAIM-DEFENDANTS' MEMORANDUM
OF CONTENTIONS OF FACT AND LAW

1   evidence.  *See United States v. Olano*, 507 U.S. 725, 733 (U.S. 1993); *Wells Fargo*

2   *Bank v. Superior Court*, 22 Cal. 4th 201, 211 (2000); *Nagrampa v. MailCoups, Inc.*,

3   469 F.3d 1257, 1278-79 (9th Cir. 2006); *United States v. Yocum*, 2000 U.S. App.

4   LEXIS 14471 (9th Cir. 2000).  The affirmative defense of waiver should be decided

5   by the Court.  *See, e.g., Granite State Ins. Co. v. Smart Modular Techs., Inc.*, 76

6   F.3d 1023, 1027 (9th Cir. 1996).

7       To establish unclean hands as an affirmative defense to McNeil's

8   counterclaims, Counterclaim-Defendants will be required to prove that McNeil

9   engaged in willful and deceitful conduct that resulted in prejudice to Counterclaim-

10  Defendants by clear and convincing evidence.  McNeil's misconduct or fraud must

11  be intimately connected with its counterclaims and of such a prejudicial nature that

12  it would be unfair to allow McNeil to pursue its claims.  *See Jarrow Formulas, Inc.*

13  *v. Nutrition Now, Inc.*, 304 F.3d 829, 835 (9th Cir. 2002); *Pfizer Inc. v. Int'l*

14  *Rectifier Corp.*, 685 F.2d 357, 359 (9th Cir. 1982); *CrossTalk Productions, Inc. v.*

15  *Jacobson* (1998) 65 Cal. App. 4th 631, 639-643, 76 Cal. Rptr. 2d 615; *Unilogic,*

16  *Inc. v. Burroughs Corp.* (1992) 10 Cal. App. 4th 612, 618-623, 12 Cal. Rptr. 2d

17  741; *Soon v. Beckman* (1965) 234 Cal. App. 2d 33, 36, 44 Cal. Rptr. 190;

18  *Fibreboard Paper Products Corp. v. East Bay Union of Machinists* (1964) 227 Cal.

19  App. 2d 675, 728, 39 Cal. Rptr. 64.

20      In addition to providing a defense to McNeil's counterclaims, the doctrine of

21  unclean hands is being asserted as a bar to McNeil's laches defense against Sugar's

22  affirmative claims.  To prevail on this doctrine, Sugar must establish that McNeil's

23  conduct was fraudulent or deceitful with respect to the controversy at issue.  *See*

24  *Jarrow Formulas, Inc. v. Nutrition Now, Inc.*, 304 F.3d 829, 835 (9th Cir. 2002)

25  (quoting *Precision Instr. Mfg. Co. v. Auto Maint. Mach. Co.*, 324 U.S. 806, 814

26  (1945)); *Republic Molding Corp. v. B.W. Photo Utils.*, 319 F.2d 347, 349 (9th Cir.

27  1963); *Merisant Co., v. McNeil Nutritionals, LLC*, 2007 U.S. Dist. LEXIS 14780,

28

SQUIRE, SANDERS &
DEMPSEY L.L.P.
555 South Flower Street, 31st Floor
Los Angeles, CA  90071-2300

- 7 -

PLAINTIFF'S, PLAINTIFF-INTERVENORS', AND
COUNTERCLAIM-DEFENDANTS' MEMORANDUM
OF CONTENTIONS OF FACT AND LAW

1    *62 (E.D. Pa. 2007); *see also, e.g., Crown Packaging Technology, Inc. v. Rexam*

2    *Beverage Can Co.*, 498 F. Supp. 2d 718, 726-27 (D. Del. 2007).

3         With respect to the affirmative defense of First Amendment/*Noerr-*

4    *Pennington* protection, the Court has ruled that the *Noerr-Pennington* doctrine

5    applies to Counterclaim-Defendants.  *See* Order dated October 18, 2006.  The

6    *Noerr-Pennington* doctrine provides immunity to one who petitions the government

7    or whose conduct is merely incidental to petitioning activity, such as one engaged

8    in "[a] publicity campaign directed at the general public and seeking governmental

9    action." *Manistee Town Center v. City of Glendale*, 227 F.3d 1090, 1092 (9th Cir.

10   2000).  The burden of proof with respect to this defense has shifted to McNeil, and

11   Counterclaim-Defendants are entitled to prevail on this affirmative defense unless

12   McNeil can establish that the petitioning activity is a sham.  *See Professional Real*

13   *Estate Investors, Inc. v. Columbia Pictures Industries*, 508 U.S. 49 (1993).

14        To establish the defense of lack of standing, Counterclaim-Defendants must

15   establish that McNeil has failed to meet the three-part requirements to demonstrate

16   its standing, which state: (1) it must have suffered an injury in fact; (2) there must

17   be a causal connection between the injury and the complained of conduct; and (3)

18   it must be likely, as opposed to speculative, that the injury will be redressed by a

19   favorable decision.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992);

20   *Barrus v. Sylvania*, 55 F.3d 468, 470 (9th Cir. 1995).

21        To prevail on the issue of not entitled to relief, Counterclaim-Defendants

22   must prove that McNeil cannot recover the relief they seek because it is not entitled

23   to such relief.  *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1145-1147

24   (9th Cir. 1997).

25        To prevail on the issue of no damages Counterclaim-Defendants must prove

26   that based on the totality of the circumstances, McNeil is not entitled to any just

27   compensation.  *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1145-1146

28   (9th Cir. 1997).

SQUIRE, SANDERS &
DEMPSEY L.L.P.
355 South Flower Street, 31st Floor
Los Angeles, CA  90071-2300

- 8 -

PLAINTIFF'S, PLAINTIFF-INTERVENORS', AND
COUNTERCLAIM-DEFENDANTS' MEMORANDUM
OF CONTENTIONS OF FACT AND LAW

1    To prevail on the issue of no causation Counterclaim-Defendants must prove
2    their actions did not cause the damage suffered by McNeil. *Southland Sod Farms*
3    *v. Stover Seed Co.*, 108 F.3d 1134, 1145-1146 (9th Cir. 1997).

4    To prevail on the issue of failure to mitigate damages, Counterclaim-
5    Defendants must prove that McNeil (1) failed to use reasonable efforts to mitigate
6    damages; and (2) the amount by which damages would have been mitigated. *See*
7    Manual of Model Jury Instructions for the Ninth Circuit, Instruction 5.3 (2007 ed.).

8    ## III.   CONTENTIONS OF FACT SUPPORTING SUGAR'S CLAIMS AND
9    REFUTING MCNEIL'S COUNTERCLAIMS

10   ### A.   The Artificial Sweetener Splenda and Concerns About its Safety

11   4,1',6'-trichloro-4,1',6'-trieoxygalactosucrose ("sucralose") is the chemical
12   sweetener in Splenda.  Sucralose was patented in 1976.  Although it may be
13   manufactured in a number of different ways and without sucrose (sugar), McNeil
14   employs a multi-step chemical process that converts sucrose into a number of
15   different intermediary chemicals before using a chlorinating agent to yield
16   sucralose.

17   Sucralose has several distinct taste characteristics compared to sugar.
18   McNeil itself acknowledges that sucralose: (1) is about 600 times sweeter than
19   sugar; (2) suffers from delayed onset of sweetness compared to sugar; (3) suffers
20   from a lingering sweetness compared to sugar; and (4) can never attain the level of
21   sweetness as sugar.

22   Neither sucralose nor Splenda *is natural*.  Splenda is not sugar, and it does
23   not contain sugar.  Rather, Splenda tabletop and foodservice products contain the
24   artificial sweetener sucralose that is combined with the ingredients maltodextrin
25   and dextrose, which are used to bulk up the amalgamation and to dilute the
26   unnatural, high-intensity sweetness of the sucralose.  By volume, sucralose makes
27   up only a little more than 1% of packet or granular Splenda.

28

SQUIRE, SANDERS &
DEMPSEY L.L.P.
555 South Flower Street, 31st Floor
Los Angeles, CA  90071-2300

- 9 -

PLAINTIFF'S, PLAINTIFF-INTERVENORS', AND
COUNTERCLAIM-DEFENDANTS' MEMORANDUM
OF CONTENTIONS OF FACT AND LAW

In late 2000, McNeil began offering Splenda for sale in retail stores in the United States. Despite its admissions and knowledge that Splenda is a totally manmade product, and its key sweetening ingredient cannot be found anywhere in nature, McNeil has engaged in a false advertising campaign that explicitly and implicitly causes consumers to believe, among other things, that Splenda is a natural food product.

Further, serious health and safety issues arise from the use of Splenda. These issues are revealed by McNeil's failure to pursue important follow-up work. Though ingested Splenda and sucralose remain largely in the gastrointestinal system, and specifically, the gut, McNeil has neither studied Splenda's affect on that internal environment nor presented such studies to the Food and Drug Administration ("FDA") during its consideration of sucralose as a permitted food additive. Nor were studies conducted, much less reviewed by McNeil or the FDA, to determine, just for example: the long term effects of sucralose or Splenda on humans; whether pregnant women experience gastrointestinal problems associated with sucralose consumption; or whether sucralose or Splenda decreases the oral bioavailability of any medications. McNeil's Director of Regulatory Affairs—who acted as McNeil's liaison to the FDA when it sought to obtain permission for sucralose's use as a food ingredient—has admitted that the number of studies deemed "inconclusive" by the FDA was "high." Nonetheless, in addition to promoting a natural message, McNeil worked hard at putting the "halo of health" around Splenda products.

Additionally, the results of a study by Sugar's expert scientists shows that: (1) Splenda affects key drug transport and processing mechanisms in the body that can lower the bioavailability of prescription medications taken by Splenda users; (2) Splenda decreases levels of beneficial gut microflora, which normally aid digestion and nutrient absorption, and can thus cause gastrointestinal disturbances;

SQUIRE, SANDERS &
DEMPSEY L.L.P.
355 South Flower Street, 31st Floor
Los Angeles, CA 90071-2300

- 10 -

PLAINTIFF'S, PLAINTIFF-INTERVENORS', AND
COUNTERCLAIM-DEFENDANTS' MEMORANDUM
OF CONTENTIONS OF FACT AND LAW

1  and (3) Splenda likely contributes to weight gain in some circumstances despite its
2  zero calorie marketing.

3  ## B.    What McNeil Knew And Did Prior To Splenda's Launch

4      Long before the product was launched and this lawsuit was filed, McNeil
5  was already preparing for its Splenda advertising.  In this regard, McNeil kicked off
6  that effort in 1988 by commissioning brand research specifically to "obtain research
7  that will *provide a solid defense in the event of litigation* from the Sugar
8  Association or sweetener manufacturers" arising from the planned (and eventual)
9  Splenda "advertising claims" which "involved direct comparisons to sugar."
10 Following FDA approval of sucralose as a food ingredient and prior to Splenda's
11 U.S. launch, McNeil conducted focus groups, "interview[ed] key company
12 personnel," and gained counsel from numerous marketing experts.  During that
13 process McNeil made a conscious choice to play up Splenda's so-called "sugar
14 origins" and thereby knowingly created consumer confusion about Splenda as a
15 trade-off for generating high consumer interest in the new product.

16     McNeil's marketing advisors warned McNeil that it "cannot claim in any
17 way that Splenda is 'natural.'  It is chlorinated sugar and is therefore just as
18 chemical in nature as aspartame or saccharin."  McNeil was also advised that
19 "expla[nation of] how Splenda is made . . . only seems to confuse or raise too many
20 doubts about the sugar origin."

21     McNeil was very nearly obsessed with the subject of consumer confusion.  It
22 "needed to learn" whether "the product [was] perceived as natural or chemical" and
23 whether consumers' interest was fueled by their confusion "based on their
24 interpretation of the products sugar origins."  McNeil recognized that making overt
25 expressions of naturalness was akin to playing with a "loaded gun."  But despite
26 McNeil's decision not to "deliver the nature story" "overtly," McNeil planned to
27 achieve the same commercial promise (and consumer confusion) by touting "sugar
28 origins alone."  Indeed, McNeil knew the message of sugar origins (in consumer

SQUIRE, SANDERS &
DEMPSEY L.L.P.
555 South Flower Street, 31st Floor
Los Angeles, CA 90071-2300

PLAINTIFF'S, PLAINTIFF-INTERVENORS', AND
COUNTERCLAIM-DEFENDANTS' MEMORANDUM
OF CONTENTIONS OF FACT AND LAW

- 11 -

1  minds) equaled sugar goodness and thus naturalness in what its marketing advisors

2  termed the "pinwheel" of Splenda purchase drivers.

3      McNeil also learned that positioning Splenda as a "Family" product would

4  help "move consumers up the benefit hierarchy (i.e., appears to be communicating

5  more broadly than the literal interpretation of the positioning . . . health, safety,

6  naturalness, goodness halo)." Those "'good for the family' . . . benefits of health,

7  *safety*, *naturalness* and taste" were deemed as "positive benefits" for McNeil.

8      **C.   What McNeil Knew And Did From 2000 Through 2002**

9      Ready to enter the market in late 2000, McNeil started running its "Moon"

10 television advertising campaign, which touted Splenda as "made from sugar," while

11 also disclosing—based on legal concerns—that "it's not sugar." McNeil also

12 carefully measured whether consumers believed that Splenda was "not an artificial

13 product" and calibrated the data it gathered during periods in which the

14 advertisements were run against those in which they were not. This data showed

15 that notwithstanding the "not sugar" disclosure in the Moon ad, McNeil's overall

16 advertising campaign produced big gains for McNeil's "key copy point" that

17 Splenda is "not an artificial product." McNeil's advertising was thus shown to

18 cause consumer confusion.

19     Celebrating the observed trend, McNeil decided to intensify its efforts  to

20 "bring[] the goodness of sugar-heritage, warmth, and giving nature-back into

21 everyday gatherings with family & friends" even more.  It used the data

22 demonstrating consumer confusion in external marketing materials to enlist

23 ingredient customers like Coke, Pepsi, and Nestle beginning at least as early as

24 April 13, 2002.  On that day, the data reflecting consumers' "not an artificial

25 product" was brought to McNeil President Colin Watts' attention as "must have"

26 information for Pepsi and Coke presentations because it illustrated that Splenda

27 enjoyed a "sugar gap advantage versus [other] LCS brands."

28

SQUIRE, SANDERS &
DEMPSEY L.L.P.
555 South Flower Street, 31st Floor
Los Angeles, CA 90071-2300

- 12 -

PLAINTIFF'S, PLAINTIFF-INTERVENORS', AND
COUNTERCLAIM-DEFENDANTS' MEMORANDUM
OF CONTENTIONS OF FACT AND LAW

April 2002 was also the month that Merisant Company (the maker of Equal) directly questioned McNeil's advertising.   By letter dated April 22, 2002, Merisant's CEO, Arnold Donald, wrote to Colin Watts and asked that McNeil "take a fresh look at" its Splenda claims to "determine the appropriateness of continuing to use them."   Mr. Donald expressed the concern that based on McNeil's advertising consumers may "believe Splenda was more natural and less artificial than . . . other sugar substitutes in the market."   Despite having just received the data revealing Donald's concern to be true, Watts rejected the request and explained that he had thoroughly reviewed the issues and "there is no reason to believe consumers will perceive an implied claim that SPLENDA is more natural than other sugar substitutes."

Merisant's letter sparked a cover-up.  McNeil almost immediately stopped tracking the "not artificial" attribute because it was concerned that it would be suspicious to competitors.  McNeil's staff and outside consultants were told that they could no longer track the "not artificial" "key copy point" from the tracking studies.  Of the sixteen metrics that were being tracked for McNeil over multiple years, the elimination of the "not artificial" attribute was the only change that was ever made to the tracking studies.

Despite taking this step, McNeil continued to capitalize on the tracking results showing consumer confusion.  For at least six months after McNeil was apprised of Merisant's complaints, McNeil continued to use the "not artificial" attribute tracking data to pitch its ingredient customers with the notion that consumers were confused.  And those customers walked away from meetings with McNeil having learned from it that many consumers believed Splenda to be natural.

**D.**   **What McNeil Knew And Did During 2003 And Beyond**

At the end of 2002, McNeil decided to take even bolder steps to encourage the consumer confusion it had been fostering, tracking, and from which it was already reaping profits.  McNeil dropped the "not sugar" disclosure from its

SQUIRE, SANDERS &
DEMPSEY L.L.P.
355 South Flower Street, 31st Floor
Los Angeles, CA  90071-2300

- 13 -

PLAINTIFF'S, PLAINTIFF-INTERVENORS', AND
COUNTERCLAIM-DEFENDANTS' MEMORANDUM
OF CONTENTIONS OF FACT AND LAW

1   television advertising.  Thus, at the start of 2003, McNeil moved from the "Moon"
2   ad campaign to the "Love" and "Girl" themes that evoke the "family" positioning
3   McNeil had earlier identified as supportive of its "naturalness" positioning, without
4   the previous "not sugar" disclosure.  Not content with the step it had taken to cover
5   up its awareness of the consumer confusion it was encouraging by no longer
6   tracking perceptions of Splenda as "not an artificial product," McNeil even moved
7   to change direct quotes from consumers about Splenda being viewed as "not
8   artificial" or "natural" included in other research it commissioned in July 2003.

9       Despite its best efforts to conceal the truth about its unlawful business
10  strategy, McNeil became the victim of its own success.   The same consumer
11  confusion that McNeil had actively encouraged, measured, profited from, and then
12  tried to hide, unexpectedly made a big splash in August 2003, when Diamond
13  Crystal, a prospective (and eventual) business partner of McNeil reported the
14  results from a survey it had conducted, disclosing that Splenda enjoyed an image
15  advantage that "starts with natural, 64 percent preference."   Thereafter, McNeil
16  immediately did everything in its power to disparage the Diamond Crystal survey.

17      Then, just months before this lawsuit, the point was made yet again when
18  market research consultant Ann Davis reported to McNeil the results from a survey
19  that McNeil commissioned in connection with its launch of a sugar blend product:
20  "There is also some confusion with respect to base Splenda: About 40-50% of
21  respondents think that *base* Splenda contains sugar/is a mix of Splenda and sugar
22  (most likely due to our made from sugar/tastes like sugar messaging)."

23  **E.    The Evolution of Splenda's Market and Product Focus in the**
24          **United States**

25      Splenda's initial (internet) launch focused on diabetics, not sugar users.
26  Diabetics largely drove Splenda sales through 2002.  During this time, as it gained a
27  firm hold in the diabetic market, McNeil's focus broadened to include users of
28

SQUIRE, SANDERS &
DEMPSEY L.L.P.
333 South Flower Street, 31st Floor
Los Angeles, CA  90071-2300

- 14 -

PLAINTIFF'S, PLAINTIFF-INTERVENORS', AND
COUNTERCLAIM-DEFENDANTS' MEMORANDUM
OF CONTENTIONS OF FACT AND LAW

other low-calorie sweeteners.  It was not until after 2002 that McNeil shifted its gaze to reach the broader sweetener market and compete directly with sugar with a new product strategy, new products, and new advertising.

In the first several years following Splenda's United States' launch, McNeil maintained its LCS market orientation.  The tracking studies prepared for McNeil confirmed in March 2002 in that "Splenda awareness gains have clearly come at the expense of Sweet 'N Low and Equal as increases in Splenda have corresponded with dramatic declines for both brands."  A year later, in March 2003, a Splenda "Segmentation Study" echoed Mr. Paul's words from 2000, reiterated that LCS users still were the "currently" "low hanging fruit", and noted that it would be "harder to move dedicated sugar users into the Splenda camp."

That "low hanging fruit" distinction was key for McNeil.  The "low-hanging fruit" buyers were the LCS users, and the "middle to high hanging fruit" users were sugar users.  To get to those "middle to high hanging fruit" users, "change/evolved messaging" was required.  Even as of April 2004, McNeil strategic plans— presented to the most senior executives in the company—emphasized the need to shift the focus away from the "low hanging" LCS market and towards sugar users.

McNeil set about the task developing a "pipeline" of newer products that differentiate Splenda brand and help achieve the goal of sugar replacement. Consistent with McNeil's product pipeline plan, McNeil introduced its 5lb granular bag of Splenda in 2003.  Company goals and strategic plans made for and during 2004 documented this new path extensively.

In 2004 McNeil also launched "Domino Day", when McNeil employees on the Splenda team spent the entire day pretending they were Domino Sugar executives, in order to help McNeil think more like a sugar company and thus to compete more directly with sugar.  E-mail correspondence between McNeil employees the day after Domino Day states that "we all now have a better

SQUIRE, SANDERS &
DEMPSEY L.L.P.
555 South Flower Street, 31st Floor
Los Angeles, CA  90071-2300

PLAINTIFF'S, PLAINTIFF-INTERVENORS', AND
COUNTERCLAIM-DEFENDANTS' MEMORANDUM
OF CONTENTIONS OF FACT AND LAW

- 15 -

1  appreciation for Splenda's unique challenges and opportunities as you <u>now</u> compete

2  more directly with Domino and other sugar brands."

3      Those efforts paid off.  Whereas only a third of the displacement rate for

4  Splenda sales came from sugar users in the first few years, that number increased to

5  a 50% sugar displacement rate for of 2004.  This increase in sugar displacement is

6  even more dramatic when one considers that overall Splenda sales skyrocketed

7  from approximately $109,000,000 in 2001 and 2002 to approximately

8  $489,000,000 in 2003 and 2004 (four and a half times higher than the prior two

9  years).

10  **F.    The Truth About Splenda Campaign**

11      After taking a stand against McNeil and filing this lawsuit, the Sugar

12  Association worked with Qorvis, an outside public relations firm, to design and

13  create a website entitled "The Truth About Splenda" ("TAS"), available at

14  www.truthaboutsplenda.com.  The Sugar Association launched the TAS website as

15  part of a broad consumer education and action campaign that would inform and

16  encourage consumers to pursue governmental action about McNeil's use of false

17  and misleading advertising to promote Splenda.  Like many plaintiffs litigating

18  issues of widespread concern, the Sugar Association sought to communicate to the

19  public what it had alleged in this lawsuit and learned through independent

20  investigation.  The TAS website thus includes much of the same information

21  related by the Sugar Association's complaint and upon which that complaint is

22  based.

23      For example, one of the pages on the TAS website, entitled "Fact vs.

24  Fiction," identifies a number of statements made by McNeil regarding Splenda that

25  the complaint alleges to be false or misleading.  The website also educates the

26  public about sucralose—the chemical sweetening ingredient in Splenda—advising

27  users that it is chemically engineered to include chlorine atoms to create a

28  compound unknown to the world until 1976.

SQUIRE, SANDERS &
DEMPSEY L.L.P.
155 South Flower Street  31st Floor
Los Angeles, CA  90071-2300

- 16 -

PLAINTIFF'S, PLAINTIFF-INTERVENORS', AND
COUNTERCLAIM-DEFENDANTS' MEMORANDUM
OF CONTENTIONS OF FACT AND LAW

The TAS website is not alone in its public criticism of and disclosures about McNeil's Splenda products and advertising.  In fact, many other websites, authors, and medical professionals decry Splenda.  A Google search using the term "Splenda," brings up numerous websites that are far more critical about Splenda and its health effects than the "Truth About Splenda" website.

## IV.   <u>EVIDENTIARY ISSUES</u>

Sugar and Counterclaim-Defendants concurrently filed an omnibus motion *in limine* to exclude any reference, presentation of evidence, or argument regarding certain evidence as follows:

1.   Sugar and Counterclaim-Defendants seek to exclude McNeil from improperly seeking to have the jury give extraordinary deference to the FDA's approval of sucralose for use in the market, and specifically, McNeil's attempts to have the jury believe that the FDA's "approval" of the use of one of Splenda's ingredients, sucralose, in the market as a food additive, constitutes a conclusive and final determination, and the FDA's approval of sucralose means that sucralose and Splenda are unequivocally "safe" to consume.

2.   Sugar and Counterclaim-Defendants seek to exclude McNeil from improperly suggesting that foreign regulatory agencies' allowance of sucralose as a food ingredient in other places also amounts to a conclusive determination of the product's safety.

3.   Sugar and Counterclaim-Defendants seek to exclude McNeil from introducing evidence of other low calorie sweeteners' advertisements that McNeil alleges are similar to its own to support McNeil's defense.

4.   Sugar and Counterclaim-Defendants seek to exclude McNeil from introducing evidence suggesting that sucralose gets its "sweet" taste, or tastes as it does, because it is manufactured using sucrose.

SQUIRE, SANDERS &
DEMPSEY L.L.P.
355 South Flower Street, 31st Floor
Los Angeles, CA 90071-2300

- 17 -

PLAINTIFF'S, PLAINTIFF-INTERVENORS', AND
COUNTERCLAIM-DEFENDANTS' MEMORANDUM
OF CONTENTIONS OF FACT AND LAW

5.      Sugar and Counterclaim-Defendants seek to exclude McNeil from introducing its new Splenda advertisements into evidence that do not contain the same false messages as those being challenged in this lawsuit.

6.      Sugar and Counterclaim-Defendants seek to exclude McNeil from suggesting or arguing that a survey of how consumers perceive a particular advertisement (such as a product package) is not probative of how consumers may perceive other aspects of a company's advertising or marketing campaign.

7.      Sugar and Counterclaim-Defendants seek to exclude McNeil from introducing the Qorvis pitch document entitled "Splen-duh" as evidence in support of McNeil's Counterclaim.

8.      Sugar and Counterclaim-Defendants seek to exclude McNeil from introducing Anne Haudrich's 2003 Presentation entitled "Consumer Perceptions About Splenda" as evidence at trial.

In addition to the omnibus motion *in limine* filed by Sugar and Counterclaim-Defendants, McNeil has filed 14 motions *in limine* to exclude any reference, presentation of evidence, or argument regarding the following:

1.      Evidence relating to other litigation;

2.      Improper references to defense counsel;

3.      Evidence regarding (a) foreign judgments about Splenda advertising and (b) the marketing and sale of Splenda in jurisdictions outside of the United States;

4.      References to non-testifying experts and their opinions;

5.      Third-party statements characterizing Splenda advertising;

6.      Anecdotal evidence of confusion regarding Splenda advertising;

7.      The 2004 survey regarding Splenda advertising conducted by the Center for Science in the Public Interest;

8.      Evidence of price-erosion;

SQUIRE, SANDERS &
DEMPSEY L.L.P.
455 South Flower Street, 31st Floor
Los Angeles, CA  90071-2300

- 18 -

PLAINTIFF'S, PLAINTIFF-INTERVENORS', AND
COUNTERCLAIM-DEFENDANTS' MEMORANDUM
OF CONTENTIONS OF FACT AND LAW

9. Evidence relating to Sugar's and Counterclaim-Defendants' expert scientists' testing of Splenda;

10. Allegedly irrelevant and inflammatory evidence concerning the Splenda manufacturing process;

11. Allegedly duplicative expert testimony;

12. Anecdotal evidence of adverse health effects;

13. Testimony relating to FDA approved drugs that have been withdrawn or recalled; and

14. Proposed trial testimony of Michael Jacobson, Patrick Henneberry, and H.P. Mechler.

## V.   BIFURCATION OF ISSUES

Sugar and Counterclaim-Defendants believe that there are no claims or issues that should be bifurcated for a separate trial.

## VI.   JURY TRIAL

The claims made by Sugar and the counterclaims made by Defendants are properly tried to a jury. Plaintiff and Plaintiff-Intervenors made timely demands for a jury trial under Fed. R. Civ. P. 38 and Local Rule 38-1 in the Complaint filed on December 10, 2004 and the Complaint in Intervention filed on November 29, 2005.

## VII.   ATTORNEYS' FEES

Sugar seeks recovery of attorneys' fees in this case. Attorneys' fees are recoverable under the Lanham Act, 15 U.S.C. § 1117(a) for violations of 15 U.S.C. § 1125(a) in exceptional circumstances, which includes cases in which the act is fraudulent, deliberate, or willful. *Horphag Research Ltd. v. Garcia*, 475 F.3d 1029, 1039 (9th Cir. 2007) (finding defendant's deliberate and calculated attempts to confuse one product with another by altering quotations from research publications warranted award of attorneys' fees under Lanham Act); *see also Gracie v. Gracie*, 217 F.3d 1060, 1068 (9th Cir. 2000). As set forth above, McNeil's conduct with respect to its Splenda advertising and marketing was a deliberate and willful effort

SQUIRE, SANDERS &
DEMPSEY L.L.P.
555 South Flower Street, 31st Floor
Los Angeles, CA 90071-2300

PLAINTIFF'S, PLAINTIFF-INTERVENORS', AND
COUNTERCLAIM-DEFENDANTS' MEMORANDUM
OF CONTENTIONS OF FACT AND LAW

- 19 -

to create and capitalize upon consumer confusion.  Therefore, Sugar is entitled to an award of attorneys' fees.

## VIII.  ABANDONMENT OF ISSUES

Counterclaim-Defendants abandon the following affirmative defenses: first affirmative defense that McNeil's Counterclaims fail, in whole or in part, to state a claim upon which relief can be granted; second affirmative defense that McNeil's Counterclaims are barred by laches; fourth affirmative defense that the Counterclaims are barred by the doctrine of estoppel; sixth affirmative defense that the Counterclaims are barred by applicable statutes of limitation; ninth affirmative defense for nonjoinder of parties; and fourteenth affirmative defense of not a real party in interest.

Dated:  December 17, 2007

Respectfully,

SQUIRE, SANDERS & DEMPSEY L.L.P.

By: _____

Adam R. Fox
Anne C. Goodwin

Attorneys for:
The Sugar Association, Inc.; American Sugar Refining, Inc.; C&H Sugar Company, Inc.; Imperial Sugar Company; Rio Grande Valley Sugar Growers, Inc.; Western Sugar Cooperative; and Qorvis Communications, LLC

LOSANGELES/256372.1

SQUIRE, SANDERS &
DEMPSEY L.L.P.
555 South Flower Street, 31st Floor
Los Angeles, CA  90071-2300

- 20 -

PLAINTIFF'S, PLAINTIFF-INTERVENORS', AND
COUNTERCLAIM-DEFENDANTS' MEMORANDUM
OF CONTENTIONS OF FACT AND LAW