RICHARD B. GOETZ (S.B. #115666)
DIANA M. TORRES (S.B. #162284)
CARLOS M. LAZATIN (S.B. #229650)
O'MELVENY & MYERS LLP
400 South Hope Street
Los Angeles, CA 90071-2899
Telephone: (213) 430-6000
Facsimile: (213) 430-6407
rgoetz@omm.com
dtorres@omm.com
clazatin@omm.com

STEVEN A. ZALESIN (admitted *pro hac vice*)
CLAY J. PIERCE (admitted *pro hac vice*)
KARLA G. SANCHEZ (admitted *pro hac vice*)
PATTERSON BELKNAP WEBB &
TYLER LLP
1133 Avenue of the Americas
New York, New York 10036-6710
Telephone: (212) 336-2000
Facsimile: (212) 336-2222
sazalesin@pbwt.com
cjpierce@pbwt.com
kgsanchez@pbwt.com

*Attorneys for Defendants McNeil-PPC, Inc.
and McNeil Nutritionals, LLC*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE SUGAR ASSOCIATION, INC., a Delaware corporation,<br><br>Plaintiff,<br><br>v.<br><br>McNEIL-PPC, INC., a New Jersey corporation, McNEIL NUTRITIONALS, LLC, a Delaware Limited Liability Company, and DOES 1 through 10,<br><br>Defendants.<br><br>AND RELATED ACTIONS | Case No. CV 04-10077 DSF (RZx)<br><br>**MCNEIL'S OMNIBUS MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFFS' MOTIONS IN LIMINE**<br><br>*REDACTED PUBLIC VERSION*<br><br>Hearing Date: January 7, 2007<br>Time: 1:30 p.m.<br>Place: Courtroom 840<br>Judge: Honorable Dale S. Fischer |

# TABLE OF CONTENTS

I.    PRELIMINARY STATEMENT..................................................................................1

II.   ARGUMENT ..........................................................................................................1

    A.   McNeil Should Be Permitted to Submit Evidence Regarding the
        FDA's Approval of Sucralose.....................................................................1

    B.   Evidence Concerning the Approval of Sucralose for Human
        Consumption by Foreign Regulatory Authorities Is Relevant and
        Should Be Admitted.....................................................................................3

    C.   Evidence Concerning the Manner in Which Other Low Calorie
        Sweeteners Are Advertised Is Highly Probative and Should Not Be
        Excluded......................................................................................................6

    D.   Plaintiffs Offer No Legitimate Basis to Exclude Evidence
        Concerning the Connection Between the Taste of Splenda and the
        Use of Sugar in the Splenda Manufacturing Process.................................12

    E.   McNeil Does Not Intend to Submit Evidence Concerning Its New
        Advertising................................................................................................14

    F.   A Survey of the Messages Communicated by the Splenda Package
        Is Not Necessarily Indicative of the Messages Conveyed by Every
        Advertisement ...........................................................................................14

    G.   The "Splen-Duh" Pitch Document Is Probative of Counterclaim
        Defendants' Actual Intent and Should Not Be Excluded .........................17

    H.   Anne Haudrich's 2003 Presentation Is Not Hearsay and Should Be
        Admitted....................................................................................................21

MCNEIL'S OMNIBUS MIL OPP.
CV 04-10077 DSF (RZX)

1420761v.1

# TABLE OF AUTHORITIES

## CASES

*Am. Express Travel-Related Services Co. v. MasterCard International Inc.*, 776 F. Supp. 787 (S.D.N.Y. 1991)........................................16

*Am. Home Products Corp. v. Procter & Gamble Co.*, 871 F. Supp. 739 (D.N.J. 1994) ................................................ 10, 12-13

*Am. Home Products Corp. v. Johnson & Johnson*, 672 F. Supp. 135 (S.D.N.Y. 1987) ................................................................3

*AstraZeneca LP v. TAP Pharm. Products, Inc.*, 444 F. Supp. 2d 278 (D. Del. 2006)........................................................15-16

*Castrol Inc. v. Pennzoil Co.*, 799 F. Supp. 424 (D.N.J. 1992).......................6

*Compaq Computer Corp. v. Packard Bell Electrics, Inc.*, 163 F.R.D. 329 (N.D. Cal. 1995) ..................................................... 6-7

*Cooper v. Firestone Tire & Rubber Co.*, 945 F.2d 1103 (9th Cir. 1991) .....11

*Doe v. DEA*, 484 F.3d 561 (D.C. Cir. 2007) ......................................2

*Engquist v. Oregon Department of Agriculture*, 478 F.3d 985 (9th Cir. 2007)............................................................................5

*Fresenius Medical Care Holdings, Inc. v. Baxter International, Inc.*, No. C 03-01431 SBA (EDL), 2006 WL. 1646113 (N.D. Cal., June 12, 2006)........................................................................13

*Harcourt Brace Jovanovich Legal & Prof's Publics, Inc. v. Multistate Legal Studies, Inc.*, 26 F.3d 948 (9th Cir. 1994)......................................21

*Hot Wax, Inc. v. Turtle Wax, Inc.*, 191 F.3d 813 (7th Cir. 1999)....................8

*Illinois Bell Tel. Co. v. MCI Telecomms. Corp.*, No. 96 C 2378, 1996 WL 717466 (N.D. Ill. Dec. 9, 1996) ......................................3-4

*Jarrow Formulas, Inc. v. Nutrition Now, Inc.*, 304 F.3d 829 (9th Cir. 2002)............................................................................8

MCNEIL'S OMNIBUS MIL OPP.
CV 04-10077 DSF (RZX)

1    *Johnson & Johnson-Merck Consumer Pharms. Co. v. Rhone-Poulenc*

2       *Rorer Pharms, Inc.*, 19 F.3d 125 (3d Cir. 1994).................8, 20

3    *Kottle v. Northwest Kidney Centers*, 146 F.3d 1056 .....................20

4    *McEuin v. Crown Equip. Corp.*, 328 F.3d 1028 (9th Cir. 2003)...................22

5    *Merisant Co. v. McNeil Nutritionals, LLC*, 242 F.R.D. 303 (E.D. Pa.

6       2007)...........................................................10

7    *Merisant Co. v. McNeil Nutritionals, LLC*, Civ. No. 04-5504, 2007

8       WL. 707359 (E.D. Pa. Mar. 2, 2007) .......................16

9    *O'Neil v. Novartis Consumer Health, Inc.*, 147 Cal. App. 4th 1388

10       (Cal. Ct. App. 2007) ........................................2

11    *Ortho Pharm. Corp. v. Cosprophar, Inc.*, 828 F. Supp. 1114 (S.D.N.Y.

12       1993)..........................................................12

13    *Procter & Gamble Pharm., Inc. v. Hoffmann-La Roche Inc.*, No. 06

14       Civ. 0034(PAC), 2006 WL. 2588002 (S.D.N.Y. Sept. 6, 2006) .........8, 16

15    *Sea-Land Service, Inc. v. Lozen Intern., LLC.*, 285 F.3d 808 (9th Cir.

16       2002)..........................................................24

17    *Tire Kingdom, Inc. v. Morgan Tire & Automobile, Inc.*, 915 F. Supp.

18       360 (S.D. Fla. 1996) ........................................ 6-7

19    *Tome v. United States*, 513 U.S. 150 (1995) ................................24

20    *United States v. Bowen*, 857 F.2d 1337 (9th Cir. 1988)........................13, 17

21    *United States v. Moran*, 482 F.3d 1101 (9th Cir. 2007)...............................22

22    *United States v. Ray*, 930 F.2d 1368 (9th Cir. 1990) .....................24

23    *United States  v. Washington*, 462 F.3d 1124 (9th  Cir. 2006) .....................23

24

25

26

27

28

MCNEIL'S OMNIBUS MIL OPP.
CV 04-10077 DSF (RZX)

1420761v.1

Defendants and counterclaim-plaintiffs McNeil-PPC, Inc. and McNeil Nutritionals, LLC (together, "McNeil") respectfully submit this memorandum of points and authorities in opposition to plaintiffs' and counterclaim defendants' omnibus motion *in limine*.

## I.   PRELIMINARY STATEMENT

Plaintiffs' eight motions *in limine* suffer from a variety of fatal defects. In several instances, plaintiffs move to exclude arguments that McNeil has no intention of making at trial; *e.g.*, that the Food and Drug Administration's approval of sucralose constitutes incontestable proof – rather than compelling evidence – that Splenda is safe for human consumption. In other motions, plaintiffs attempt to exclude evidence that is crucial to McNeil's case on the grounds that it is prejudicial, when in fact the only "harm" from this evidence is that it fatally undermines plaintiffs' claims. As detailed below, none of plaintiffs' motions' has any merit under the applicable law or facts. They should be denied in their entirety.

## II.   ARGUMENT

The Federal Rules broadly define "relevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. "All relevant evidence is admissible," Fed. R. Evid. 402, unless the probative value of the evidence is "substantially outweighed" by the danger of unfair prejudice, Fed. R. Evid. 403.

### A.   McNeil Should Be Permitted to Submit Evidence Regarding the FDA's Approval of Sucralose

Although they have precious little evidence in their favor, plaintiffs intend to expend significant resources at trial attempting to convince the jury that the safety of Splenda is in doubt. *See, e.g.*, Pls.' Opp. to McNeil's Mot. for Summ. J. on Safety Issues. By their first motion *in limine*, plaintiffs seek an order barring McNeil from submitting to the jury one of the most important pieces of evidence on

- 1 -

MCNEIL'S OMNIBUS MIL OPP.
CV 04-10077 DSF (RZX)

1   this issue:  namely, that the Food and Drug Administration (the "FDA") has

2   approved sucralose for human consumption.

3          Plaintiffs' premise their motion on the claim that McNeil intends to

4   argue that FDA approval "constitutes a conclusive and final determination … that

5   sucralose and Splenda are unequivocally safe to consume." Plaintiffs' Omnibus

6   Motion *in Limine* ("Pls.' Mem."), at 3.  This is simply not the case.  In fact, and as

7   discussed at the recent hearing on McNeil's motion to exclude the testimony of

8   plaintiffs' expert James Turner, McNeil has never contended that the FDA's

9   approval of sucralose is "dispositive proof" of the safety of either Splenda or

10  sucralose (the sweetening ingredient in Splenda).  It is, however, compelling

11  evidence that Splenda is safe.  It is for that reason that courts routinely admit and

12  credit evidence of FDA safety determinations. *See O'Neil v. Novartis Consumer*

13  *Health, Inc.*, 147 Cal. App.4th 1388, 1393 (Cal. Ct. App. 2007) (affirming trial

14  court's jury instruction that "FDA action or inaction, though not dispositive, may be

15  considered to show whether a product is safe or not safe"); *Doe v. DEA*, 484 F.3d

16  561, 571 (D.C. Cir. 2007) ("the presence of FDA approval obviously is powerful

17  evidence that a drug has currently accepted medical use and accepted safety for use

18  under medical supervision"); *cf. Am. Home Products Corp. v. Johnson & Johnson*,

19  672 F. Supp. 135, 145 (S.D.N.Y. 1987) ("If FDA approval of the precise label used

20  by a drug manufacturer is a defense to a consumer's product liability action, it

21  should be, a fortiori, a defense to a competitor's action under the Lanham Act.").

22         Plaintiffs stress that the FDA has conceded that it is "impossible in the

23  present state of scientific knowledge to establish with complete certainty the

24  absolute harmlessness of the use of any substance." Pls.' Mem. at 4.  Plaintiffs are

25  correct, but that fact does not in any way support their motion.  The Federal Rules

26  do not require that any particular piece of evidence provide "complete certainty" of

27  any fact at issue.  Rather, evidence is relevant if it has "any tendency to make the

28  existence of any fact that is of consequence to the determination of the action more

- 2 -

**MCNEIL'S OMNIBUS MIL OPP.**
CV 04-10077 DSF (RZX)

1420761v.1

1    probable or less probable than it would be without the evidence." *See* Fed. R. Evid.

2    401. The FDA statement that plaintiffs cite acknowledges the obvious – that the

3    FDA cannot be one-hundred percent certain that every scientific determination it

4    makes is absolutely correct. This is why the standard required by the FDA to

5    approve the safety of a food additive is "reasonable certainty." This standard was

6    explicitly discussed in the expert report of McNeil's expert Dr. Ian Munro and in

7    the deposition testimony of Richard Reo, McNeil's Directory of Regulatory Affairs.

8    *See* Expert Report of Dr. Munro at 12 (Ex. 3 to Declaration of Adam Fox in

9    Support of Pls.' Mem. ("Fox Decl.")); Reo Dep. Tr. at 132 (Ex. 2 to Fox. Decl.).

10   McNeil's witnesses acknowledge that FDA approval does not provide absolute

11   certainty of a product's safety. But that does not mean that FDA approval is not

12   highly probative evidence of safety, or that McNeil should be barred from

13   discussing such approval.[1]

14       Plaintiffs have offered no basis for precluding McNeil from informing

15   the jury that sucralose has been approved by the FDA. Their motion should

16   therefore be denied.

17     **B.**     **Evidence Concerning the Approval of Sucralose for Human**

18            **Consumption by Foreign Regulatory Authorities Is Relevant**

19            **and Should Be Admitted**

20       Having sought to exclude evidence of the FDA's approval of sucralose

21   in their first motion, plaintiffs go one step further in their second motion *in limine*

22   and argue that McNeil should be barred from informing the jury that sucralose has

---

[1] Plaintiffs make a half-hearted attempt to attack the accuracy of the FDA's safety determinations for food additives by offering one example: that of saccharin. Plaintiffs incomplete history of the FDA's regulation of saccharin neglects to mention the fact that there is no longer a warning label requirement for products containing the sweetener. *See, e.g.*, FDA Consumer Magazine, "Artificial Sweeteners: No Calories… Sweet!" July-August 2006, available online at http://www.fda.gov/fdac/features/2006/406_sweteners.html (Lasky Decl. Ex. 1). Obviously, the fact that saccharin at one time had a warning label associated with it which was ultimately determined to be unfounded is hardly an indictment of the general accuracy of the FDA's safety assessments of food additives.

   **MCNEIL'S OMNIBUS MIL OPP.**
CV 04-10077 DSF (RZX)

1420761v.1

1    been approved for use by regulators in jurisdictions outside the U.S.  Plaintiffs

2    contend that such foreign approvals are irrelevant, would be confusing to the jury,

3    and would require a long and detailed presentation of information that would

4    prolong the trial.  On their face, plaintiffs' arguments appear similar to those

5    McNeil makes in its Motion *In Limine* No. 3 (docket no. 330), which seeks to

6    exclude from evidence judgments by foreign authorities concerning Splenda

7    advertising and foreign marketing materials.  In fact, while there are compelling

8    reasons to grant McNeil's motion, the same does not hold true for the motion

9    plaintiffs have filed.

10             Although plaintiffs contend otherwise, the approval of sucralose for

11    human consumption by numerous foreign regulatory authorities constitutes

12    probative evidence of the safety of Splenda.  As discussed above, plaintiffs will

13    seek to establish at trial that Splenda is unsafe.  The fact that regulatory bodies in

14    other countries have approved Splenda as safe is one piece of evidence directly

15    refuting this allegation.  This is especially true given plaintiffs' apparent intent to

16    question the value of domestic regulatory (*i.e.*, FDA) approval for sucralose by

17    asserting that the FDA is a malfunctioning, overly politicized agency.[2]  The fact

18    that other countries have agreed with the FDA's assessment regarding Splenda

19    dooms plaintiffs' unfounded attacks on the agency's safety determination.

20             Differences in regulatory standards from country to country do not

21    render this evidence irrelevant.  The substance under consideration – sucralose – is

22    the same worldwide.  The reason for each country's analysis of sucralose – to

23    determine its safety and appropriateness for that country's citizens – is also the

24    same.  Thus, although the approval process may differ from country to country,

25    their individual and collective determinations of the safety of Splenda are no less

26

27    _____
      [2] For the record, McNeil has moved *in limine* to preclude plaintiffs from offering evidence
      concerning the alleged incompetence or fallibility of the FDA.  Such evidence is both

28    irrelevant and prejudicial since it invites the jury to engage in baseless speculation over
      whether the FDA somehow erred in its approval of sucralose.

                                                        MCNEIL'S OMNIBUS MIL OPP.
                                          - 4 -           CV 04-10077 DSF (RZX)

1   relevant.

2          The same cannot be said of foreign judgments and other documents

3   relating to Splenda *advertising* outside the U.S.  As discussed in McNeil's Motion

4   *In Limine* No. 3, Splenda advertising is not the same from country to country, and

5   the standards applied by different jurisdictions to determine if advertising claims

6   are acceptable vary widely.  This makes perfect sense, since the effect of a Splenda

7   advertisement on any given person depends enormously on issues of language, diet,

8   and culture specific to the relevant market.  This case is about *U.S.* consumers

9   perceptions of *U.S.* advertising for Splenda.  Thus, documents concerning Splenda

10  advertising outside the U.S. are irrelevant.

11         Plaintiffs are wrong to suggest that evidence concerning foreign

12  regulatory approvals will confuse the jury or needlessly prolong the trial.

13  Consistent with his expert report, Dr. Munro (McNeil's safety expert), will

14  succinctly explain that Splenda has been approved in a number of foreign

15  jurisdictions.  There will be no need for Dr. Munro to embark on any long tangents

16  about foreign regulatory schemes, however, since the intricacies of one country's

17  approval process versus another's is not relevant to any material issue in this case.

18  Thus, although plaintiffs contend otherwise, there is no danger that the jury will

19  "have to process information about multiple complex regulatory schemes." *See*

20  Pls.' Mem. at 7.

21         Because evidence concerning foreign regulatory approvals of sucralose

22  is relevant to the safety of Splenda and will not result in any prejudice, plaintiffs'

23  motion should be denied.[3]

24

25  _____
    [3] Regardless of the Court's decision on this motion, the Court should clearly exclude
26  evidence concerning decisions concerning McNeil's foreign advertising.  Indeed, the
    prejudice that McNeil would suffer if plaintiffs were allowed to argue to the jury that
27  Splenda has *already* been deemed to be falsely advertised by authorities in other countries
    cannot be overstated. "Most courts forbid the mention" of such verdicts, since such
28  evidence clearly invites the jury to follow suit with the prior decision. *See Engquist v.*
    *Oregon Dep't of Agriculture,* 478 F.3d 985, 1009 (9th Cir. 2007).

                                          MCNEIL'S OMNIBUS MIL OPP.
                                          CV 04-10077 DSF (RZX)

1420761v.1

C.   **Evidence Concerning the Manner in Which Other Low Calorie Sweeteners Are Advertised Is Highly Probative and Should Not Be Excluded**

Plaintiffs seek to exclude any evidence concerning how other low calorie sweeteners are advertised to consumers. Plaintiffs' strategy here is clear: they know that McNeil's Splenda advertising is fundamentally no different than the advertising for other low calorie sweeteners over the last several decades. Under well-settled law, this fact at a minimum dooms plaintiffs' claims that Splenda ads are "literally false" or that McNeil has engaged in such "egregious" conduct that plaintiffs should be relieved of their usual burden of proving actual deception. For these reasons, evidence concerning the manner in which other low calorie sweeteners have been advertised must be admitted at trial and plaintiffs' motion should be denied.

*First*, evidence concerning the advertising for other low calorie sweeteners is relevant to plaintiffs' allegation that it is literally false to claim that Splenda is "made from sugar" and "tastes like sugar." *See Illinois Bell Tel. Co. v. MCI Telecomms. Corp.*, No. 96 C 2378, 1996 WL 717466, *3 (N.D. Ill. Dec. 9, 1996) ("In determining whether a claim is literally false, industry standards should be examined."); *accord Tire Kingdom, Inc. v. Morgan Tire & Auto, Inc.*, 915 F. Supp. 360, 365-66 (S.D. Fla. 1996); *Compaq Computer Corp. v. Packard Bell Elecs., Inc.*, 163 F.R.D. 329, 336 (N.D. Cal. 1995); *Castrol Inc. v. Pennzoil Co.*, 799 F. Supp. 424, 436 (D.N.J. 1992), *aff'd*, 987 F.2d 939 (3rd Cir. 1993). For example, plaintiffs' expert Dr. Susan Schiffman intends to argue that it is literally false to advertise Splenda as tasting "like sugar." *See* Schiffman Dep. Tr. 93:21-94:19 (Lasky Decl. Ex. 2). Dr. Schiffman's sole basis for this testimony is her opinion that Splenda does not offer the *exact same* taste characteristics as sugar – although she admits that she has never done a "semantic study" of how consumers themselves understand the phrase "tastes like sugar." *See id.* at 96:6-97:2.

- 6 -

MCNEIL'S OMNIBUS MIL OPP.
CV 04-10077 DSF (RZX)

1420761v.1

1    But the evidence at trial will prove that – through decades of

2 advertising in the low calorie sweetener industry – the phrase "tastes like sugar" has

3 come to mean offering a sweet taste *similar*, but perhaps not identical, to that of

4 sugar. McNeil will show that virtually *all* low calorie sweeteners on the market

5 have been advertised as "tasting like sugar," even those sweetened with artificial

6 sweeteners, such as saccharin and acesulfame potassium ("ace-K"), that offer a less

7 sugar-like taste than sucralose. For example, the artificial sweeteners Sugar Twin®

8 and NatraTaste® include a large "Tastes like Sugar" banner right on the front of

9 their boxes, while Equal® has long been advertised as "tast[ing] like natural sugar."

10 *See* Lasky Decl. Exs. 3-5. Indeed, ***even plaintiffs themselves*** have promoted the

11 artificial sweetener neotame as having "***a clean sweet taste like sugar***" in

12 advertising for Domino® Pure D'Lite.[4] *See* Lasky Decl. Ex. 6 (emphasis added).

13    This evidence of industry usage will establish that – contrary to the

14 unsupported testimony of Dr. Schiffman – "tastes like sugar" as it appears in

15 McNeil's ads means simply that Splenda offers a taste "similar" to that of sucrose.

16 For this reason alone, McNeil's evidence of industry custom should be admitted.

17 *See Illinois Bell*, 1996 WL 717466, *5 (denying literal falsity claim on basis that

18 term "'basic rates' has an accepted meaning in the telecommunications industry");

19 *Tire Kingdom*, 915 F. Supp. at 366 (finding that ad did not violate Lanham Act

20 given "industry standard" of advertising "an Economy line without specifying the

21 actual manufacturer of that tire"); *Compaq*, 163 F.R.D. at 336 (holding that liability

22 of advertiser "for allegedly falsely advertising its personal computers to consumers

23 as being 'new' may turn on the meaning of the term within the industry").[5]

24

25 [4] Domino® Pure D'Lite, a blend of natural sugar and the artificial sweetener neotame, is marketed by plaintiff-intervenor American Sugar Refining, Inc. ("American Sugar").

26 [5] Plaintiffs' expert Dr. Itamar Simonson has opined that the "made from sugar" claim is

27 false based upon his review of the manner in which "cereal," "yogurt," and "pasta" are all marketed. *See* Simonson Dep. Tr. 49:15-50:14, 51:25-53:21 (Lasky Decl. Ex. 7).

28 Plaintiffs cannot seriously contend that the advertising for other low calorie sweeteners is irrelevant while testifying about products from other aisles in the grocery store.

- 7 -

1    ***Second***, evidence of industry custom will be relevant to plaintiffs'

2    apparent efforts to shift the burden of proving actual deception in this case to

3    McNeil, as well as their attempt to defeat McNeil's laches defense.  The parties

4    agree that, in limited circumstances, a plaintiff may be relieved of its usual burden

5    of proving that consumers have been deceived upon a showing that the defendant

6    intentionally set out to deceive the public through conduct of an "egregious" nature.

7    *See* Lasky Decl. Exs. 8-9; *see also Johnson & Johnson-Merck Consumer Pharms.*

8    *Co. v. Rhone-Poulenc Rorer Pharms, Inc.*, 19 F.3d 125, 132 (3d Cir. 1994) (holding

9    presumption of deception may arise where defendant "intentionally set out to

10   deceive the public" through "deliberate conduct" of an "egregious nature").

11   Similarly, a finding that a defendant has fraudulently intended to mislead the public

12   through its "egregious" advertisements may under some circumstances defeat a

13   laches defense. *See Hot Wax, Inc. v. Turtle Wax, Inc.*, 191 F.3d 813, 826 (7th Cir.

14   1999); *Jarrow Formulas, Inc. v. Nutrition Now, Inc.*, 304 F.3d 829, 842 (9th Cir.

15   2002).

16        In either situation, a close review of the relevant standards in the

17   industry is necessary to determine whether the defendant's conduct was of such an

18   "egregious" nature that the defendant should be denied its usual defenses. *See, e.g.,*

19   *Rhone-Poulenc*, 19 F.3d at 132 (holding that defendants had not engaged in

20   "deliberate conduct of an egregious nature" given that "evidence only shows an

21   intent to mislead, or to create a misleading halo effect, of a kind that is

22   unfortunately common in the antacid industry"); *Hot Wax*, 191 F.3d at 826 (holding

23   that advertiser did not engage in "egregious" conduct in light of "evidence of

24   industry and consumer expectations"); *see also Procter & Gamble Pharms., Inc. v.*

25   *Hoffmann-La Roche, Inc.*,  No. Civ. 0034 (PAC), 2006 WL 2588002, *29

26   (S.D.N.Y. Sept. 6, 2006) (holding that defendant's claims were not so "egregious"

27   that plaintiff should be relieved of its burden of proving deception given that claims

28   "do not appear to be atypical of conduct in a competitive marketplace").

- 8 -

**MCNEIL'S OMNIBUS MIL OPP.**
CV 04-10077 DSF (RZX)

1    Here, the marketing standards in the low calorie sweetener industry

2    demonstrate that McNeil's efforts to truthfully inform consumers that Splenda is

3    "made from sugar" and "tastes like sugar" are far from "egregious." Historically,

4    ads for artificial sweeteners have almost invariably used themes evocative of sugar

5    in much the same way as Splenda advertising. For example, a television

6    commercial for Equal from the 1980s proclaimed that Equal was "So much like

7    sugar," while another ad claimed that "Equal goes" almost "everywhere sugar

8    goes" and promised that Equal offered "all these sweet sensations" of sugar

9    "without all the calories." Lasky Decl. Exs. 10 -11. Advertisements for

10   NutraSweet similarly touted the sweetener as "Today's Sugar." Lasky Decl.

11   Ex. 12.

12   In addition to emphasizing "sugar-like" properties, makers of artificial

13   sweeteners also have a long history of informing consumers about the "origins" of

14   their products. A 1984 television commercial for Equal, for example, showed an

15   array of fruits and vegetables and asserted that Equal is "made with real ingredients

16   like those found in many foods." Lasky Decl. Ex. 13. Years later, ads depicted

17   bowls of beans or fruits and described NutraSweet as "made of two building blocks

18   of protein, like those that make up things we eat every day." Lasky Decl. Ex. 14.

19   These types of claims continue to this day. *See* Lasky Decl. Ex. 15 (claim on Equal

20   website  that "Equal's sweetening ingredient is aspartame, which breaks down to

21   components commonly found in milk, meats, fruits and vegetables").

22   The evidence will thus show that McNeil's ads are entirely in-line with

23   the longstanding practice in the artificial sweetener category of promising to deliver

24   sugar's benefits without its downsides, and of emphasizing that the products derive

25   from a natural (or "real") source. The manner in which other products are

26   advertised in the low calorie sweetener industry will establish that there is nothing

27   out of the ordinary, much less "egregious," about Splenda advertising.[6]

28
---
[6] Faced with a similar argument to the one plaintiffs raise now, the court in the *Merisant v.*

MCNEIL'S OMNIBUS MIL OPP.
CV 04-10077 DSF (RZX)

1420761v.1

1     ***Third***, McNeil will need to present evidence of past industry practices

2     in connection with the presentation of its consumer surveys.  The survey of

3     McNeil's expert Dr. Susan Schwartz McDonald revealed a substantial level of

4     category-wide confusion regarding the nature of artificial sweeteners.  Dr.

5     McDonald found that a full 18.4% of surveyed consumers mistakenly responded

6     that the control product in her survey, NutraSweet artificial sweetener, contained

7     "real, natural sugar."  *See* McDonald Dep. Tr. 196:21-198:7 (Lasky Decl. Ex. 17).

8     In evaluating the results of her survey, Dr. McDonald had to net out this category-

9     wide confusion in order to determine the extent, if any, to which McNeil's

10    advertising for Splenda confuses consumers.  *See, e.g., Am. Home Prods. Corp. v.*

11    *Procter & Gamble Co.*, 871 F. Supp. 739, 749 (D.N.J. 1994) (holding that "a

12    survey addressed to an analgesic commercial must properly control for

13    preconceptions (both accurate and inaccurate) that consumers may possess given

14    their continual exposure to OTC products and advertising").  In explaining the

15    results of these surveys to the jury, McNeil must be permitted to discuss not only

16    what category confusion is, but also the reasons for the preexisting confusion in this

17

18    *McNeil* litigation held that evidence of custom and practice in the artificial sweetener
      industry was relevant and admissible at trial.  In the context of the parties' dueling

19    summary judgment motions, the *Merisant* court held that McNeil "correctly note[d]" that
      "evidence relating to Merisant's conduct or the conduct of other companies in the

20    artificial sweetener industry . . . ***may prove to be admissible*** on the issues of damages,
      impeachment of witnesses, and marketing and advertising practices of the artificial

21    sweetener industry."  *Merisant Co. v. McNeil Nutritionals, LLC*, Civ. No. 04-5504, 2007
      WL 707359, *25 (E.D. Pa. Mar. 2, 2007).

22

23    Like plaintiffs, Merisant subsequently filed a motion *in limine* seeking to exclude any
      testimony concerning advertising for Equal and NutraSweet.  The *Merisant* court,

24    confirming its prior ruling, denied that motion, holding that a "fair and reasonable
      presentation of evidence concerning advertising of Equal, and other products in the no-

25    calorie sweetener category and/or industry, ***is relevant to Merisant's claims and McNeil's***
      ***potential defenses*** in this proceeding."  *See* Lasky Decl. Ex. 16 at 3 (emphasis added).

26    Plaintiffs, however, choose to ignore this decision and instead cite to *another* ruling by the
      *Merisant* court on a motion *in limine* that is of no relevance to the present dispute.  *See*

27    *Merisant Co. v. McNeil Nutritionals, LLC*, 242 F.R.D. 303, 311-12 (E.D. Pa. 2007)
      (excluding from evidence pleadings from a challenge initiated by Merisant before the

28    National Advertising Division of the Better Business Bureau relating to advertising for the
      artificial sweetener "Shugr").

- 10 -                **MCNEIL'S OMNIBUS MIL OPP.**
                      CV 04-10077 DSF (RZX)

1   category, including how historical advertising in the category may have contributed

2   to that confusion.

3          *Finally*, at least some of these materials concerning industry practice

4   will be relevant to credibility determinations and witness impeachment at trial.  For

5   example, as noted above, plaintiffs contend that it is false to advertise Splenda as

6   "tast[ing] like sugar," because it allegedly does not taste exactly like sugar.  But

7   plaintiff-intervenor American Sugar is engaging in the same, allegedly deceptive

8   conduct when it advertises the artificial sweetener Neotame as offering "a clean

9   sweet tastes like sugar."  *See* Lasky Decl. Ex. 6.  Similarly, plaintiffs have

10  contended that the FDA approval of sucralose following the agency's review of

11  more than 100 studies on sucralose safety does not speak to whether Splenda is

12  actually a safe product.  At the same time, however, American Sugar has made the

13  following claims in its advertising:

14         On July 9, 2002, the U.S. Food and Drug Administration

15         (FDA) *affirmed neotame's safety* and functionality *by*

16         *granting general use approval* as a sweetener and flavor

17         enhancer in foods and beverages. . . . FDA has a *detailed*

18         *and extensive process for evaluating* the safety and

19         functionality of new food additives.  This *rigorous*

20         *process* included the review of *more than 100 scientific*

21         *studies* and provides a *high level of confidence* in the

22         safety of neotame.

23  *See id.* (emphasis added).  This evidence should be admitted so that the jury may

24  determine for themselves the credibility of these plaintiffs and their claims.  *See,*

25  *e.g., Cooper v. Firestone Tire & Rubber Co.*, 945 F.2d 1103, 1105 (9th Cir. 1991)

26  (holding that credibility evidence was properly admitted as bearing upon whether

27  witness's claims were "overstated" and whether testimony of witness was

28

**MCNEIL'S OMNIBUS MIL. OPP.**
CV 04-10077 DSF (RZX)

1420761v.1

1    "reliable").[7]

2           For all of the foregoing reasons, plaintiffs' attempt to exclude evidence

3    of advertising by other low calorie sweeteners are advertised should be denied.

4    **D.    Plaintiffs Offer No Legitimate Basis to Exclude Evidence**

5           **Concerning the Connection Between the Taste of Splenda**

6           **and the Use of Sugar in the Splenda Manufacturing Process**

7           One of the key factual questions that the jury must consider at trial is

8    whether the phrase "made from sugar so it tastes like sugar" is literally true; *i.e.*

9    whether there is a connection between the sugar-like taste of Splenda and its sugar

10   origins.   Incredibly, plaintiffs ask the Court to have the jury answer this question

11   while simultaneously excluding any and all testimony offered by McNeil that

12   would show that the taste of Splenda results from the use of sugar in the

13   manufacturing process.

14          Plaintiffs' claim that the testimony it seeks to exclude has "little to no

15   probative value" to McNeil's defense defies credibility.   In fact, this evidence is not

16   only highly relevant, but essential to McNeil's ability to defend against plaintiffs

17   claims of literal falsity.   Were the Court to grant plaintiffs' motion, it would

18   effectively preclude McNeil from contesting plaintiffs' allegation that it is literally

19   false to advertise Splenda as "made from sugar *so* it tastes like sugar" because,

20   allegedly, the taste of Splenda is unrelated to its sugar origins.   Needless to say,

21   plaintiffs should not be able to obtain relief akin to summary judgment on a motion

22

23   [7] The single case cited by plaintiffs in support of their argument is completely off the
     mark.   In *Ortho Pharm. Corp. v. Cosprophar, Inc.*, 828 F. Supp. 1114, 1122-23 (S.D.N.Y.
24   1993), the court refused to take judicial notice of certain ads run by competitor cosmetic
     companies after the close of trial.   The defendant had argued that the plaintiff's failure to
25   challenge these ads "negate[d] a presumption of irreparable harm."   *Id.* at 1122.   The court
     disagreed, holding that "the presumption of irreparable harm is not diminished because
26   companies other than the plaintiff may be running advertisements which might run afoul
     of the Lanham Act."   *Id.* at 1123.   Here, evidence of industry custom should be admitted
27   because, among other things, it bears upon whether McNeil's claims are literally false and
     whether McNeil has engaged in "egregious" conduct.   Nobody contends, however, that
28   plaintiffs' failure to act on these competitor ads should negate a finding that plaintiffs
     have been "irreparably harmed."

                                                  - 12 -         **MCNEIL'S OMNIBUS MIL OPP.**
                                                                 CV 04-10077 DSF (RZX)

1    *in limine.*

2         Plaintiffs' arguments that this evidence will prejudice the jury are

3    equally specious. Indeed, plaintiffs admit that the principle danger of such

4    evidence is that the jury may rely on it in rejecting plaintiff's allegations; *i.e.*, that

5    the jury would be "misled into believing that Splenda gets its taste . . . because it

6    starts with sucrose." Pls.' Mem. at 8. Plaintiffs appear to misapprehend Rule 403,

7    which precludes evidence that has "an undue tendency to suggest decision on an

8    improper basis," but not (as here) evidence that may persuade the jury that one

9    side's allegations are unsupported. Fed. R. Evid. 403, Advisory Committee Notes

10   to 1972 Proposed Rules. Suffice it to say, "prejudice" for Rule 403 purposes "does

11   not mean that the defendant's case is merely damaged, for the more probative the

12   evidence is, the more damaging it is apt to be." *United States v. Bowen*, 857 F.2d

13   1337, 1341 (9th Cir. 1988).[8]

14        Although plaintiffs make several factual arguments in support of their

15   motion, those arguments all raise issues that must be addressed by the jury. For

16   example, plaintiffs contend that there are "many ways" to make sucralose without

17   using sugar, including a process using raffinose, a molecule closely related to

18   sucrose. At trial, McNeil will present testimony from, among others, Steven Catani

19   – its Vice-President of Technology and Intellectual Property – that sucralose has

20   only been made using sucrose as the starting point. While plaintiffs make much of

21   the fact that it is also possible to produce sucralose using raffinose, this is true only

22   because the raffinose molecule *contains sucrose*. *See generally* Expert Report of

23   Dr. Steven Munger at 12-14 (Lasky Decl. Ex. 18). In point of fact, sucralose has

24   never been made using raffinose. The jury will also hear from Dr. Steven Munger,

25   _____

     [8] In addition, although plaintiffs argue that "[a] juror who does not understand the science

26   ... will be misled," Pls.' Mem. at 8., the mere fact that the underlying evidence may be
     complex is not a basis to exclude relevant evidence. If anything, that fact favors letting

27   the jury hear *all* relevant evidence, not just one party's viewpoint. *See, Fresenius Medical
     Care Holdings, Inc. v. Baxter Int'l, Inc.*, No. C 03-01431 SBA (EDL), 2006 WL 1646113,

28   *3-4 (N.D. Cal., June 12, 2006) (refusing to exclude evidence where the opposing party
     intended to introduce testimony on the same subject matter).

                                              MCNEIL'S OMNIBUS MIL OPP.
                                              CV 04-10077 DSF (RZX)

1420761v.1

1   McNeil's scientific expert, who will explain how the sweetness of sugar can both

2   be lost or, as with Splenda, enhanced depending on how the sucrose molecule is

3   modified. *See id.* Again, plaintiffs should not be allowed to exclude McNeil's

4   defense based on factual assertions that are contested and must be submitted to the

5   jury. For all of the above reasons, plaintiffs' motion should be denied.

6       **E.    McNeil Does Not Intend to Submit Evidence Concerning Its**

7             **New Advertising**

8             Plaintiffs ask this Court to prevent McNeil from presenting evidence

9   concerning recent Splenda advertising that includes claims different from those at

10  issue in this case. In fact, McNeil has no intention of introducing "into evidence its

11  new Splenda advertisements [which do not contain the phrase "Made From Sugar

12  So It Tastes Like Sugar"] … because the ads purportedly show that McNeil has

13  reformed." *See* Pls.' Mem. at 9. To the contrary, during the meet-and-confer

14  process prior to the parties' filings,

15                          REDACTED

16  *See* Lasky Decl. ¶ 1-2. Plaintiffs' counsel subsequently informed McNeil that it

17  would not agree to the exclusion of such evidence, and that McNeil should file a

18  motion to the extent it wished to preclude such evidence from trial. *See id.* ¶ 2. In

19  light of these discussions, plaintiffs decision to move on this issue is puzzling to say

20  the least.

21             As set forth in McNeil's Motion *in Limine* No. 1 to Exclude Evidence

22

23                  REDACTED

24             , should be excluded.

25      **F.    A Survey of the Messages Communicated by the Splenda**

26            **Package Is Not Necessarily Indicative of the Messages**

27            **Conveyed by Every Advertisement**

28            Plaintiffs intend to argue at trial that their consumer survey of the

- 14 -

MCNEIL'S OMNIBUS MIL OPP.
CV 04-10077 DSF (RZX)

Splenda packets box – which purportedly shows that the package conveys that Splenda contains more sugar and thus is more natural than Equal – proves that every Splenda print ad, television commercial, radio spot, and webpage that ever included the claim "made from sugar so it tastes like sugar" is misleading. To insulate that dubious argument from criticism, plaintiffs now move *in limine* to preclude McNeil from dismantling that argument at trial. McNeil, however, should not be forced to bite its tongue if plaintiffs overstate the probative value of their survey evidence to the jury.

Whether a package or advertisement conveys implicit messages – and what those messages are – is highly context specific. Sometimes slight differences in the words or imagery between a package and advertisement, or between two commercials, can alter the messages consumers are likely to take away.[9] For that reason, numerous courts – and, indeed, plaintiffs themselves – have recognized that a survey of how consumers perceive a particular advertisement (such as a product package) is not necessarily probative of how consumers perceive other aspects of a company's advertising or marketing campaign. *See, e.g., AstraZeneca LP v. TAP Pharm. Prods., Inc.*, 444 F. Supp. 2d 278 (D. Del. 2006); *Am. Home Prods. Corp. v. Procter & Gamble Co.*, 871 F. Supp. 739 (D.N.J. 1994).

Thus, for example, in *AstraZeneca*, the district court held that a consumer survey of a television commercial could not establish consumer confusion with respect to other ads in the defendant's marketing campaign. *See AstraZeneca*, 444 F. Supp. 2d at 296 (plaintiffs' survey showing that the defendant's "television advertisement was misleading to consumers" could not be used to prove that "any of the other aspects of the [ad] campaign were misleading to consumers"). A similar conclusion was reached in *American Home Products* in

---

[9] In point of fact, plaintiffs have repeatedly argued that the superficial differences between McNeil's introductory television commercial (*i.e.*, the "Moon" ad) and McNeil's later Splenda commercials justifies their unreasonable delay in bringing suit. *See, e.g.*, Pls.' Summ. J. Opp. Mem. at 12 (docket no. 231).

- 15 -                    MCNEIL'S OMNIBUS MIL OPP.
                         CV 04-10077 DSF (RZX)

1   which the court rejected the plaintiff's argument that a survey assessing the

2   messages conveyed by the defendants' television commercial and product insert

3   proved that the defendants' print advertisements were also misleading. *See Am.*

4   *Home Prods.*, 871 F. Supp. at 762 ("The Court rejects [plaintiff's] contention that

5   the [product insert] and television survey, even if probative, can be employed to

6   assess whether other" advertising for the product "was false or misleading to the

7   public.").[10]

8        Plaintiffs are well aware of these cases. In fact, in support of their

9   motion to exclude McNeil's survey expert Mr. Robert Klein, plaintiffs relied on

10   these cases and advanced the very same argument that they now seek to preclude

11   McNeil from making at trial. *See* Pls.' Mem. in Support of Mot. to Exclude

12   Testimony by Robert Klein at 5-6 (docket no. 179) (plaintiffs, citing *American*

13   *Home Products*, in support of their contention that "consumer survey results

14   concerning television ads [have] no bearing on whether print ads [are] confusing").

15        Notably, unlike the defendants in *AstraZeneca* and *American Home*

16   *Products*, McNeil has not sought a ruling that – as a matter of law – plaintiffs

17   cannot attempt to rely on their survey of the Splenda package to argue that other

18   aspects of Splenda advertising are misleading.[11] However, if plaintiffs' encourage

19   ――――――――――――――――――
     [10] For similar reasons, courts have held that consumer surveys on earlier versions of print
20   advertisements or television commercials are not probative of how consumers perceive
     modified versions of the same advertisements. *See, e.g., Procter & Gamble Pharm., Inc.*
21   *v. Hoffmann-La Roche Inc.*, No. 06 Civ. 0034(PAC), 2006 WL 2588002, *24 (S.D.N.Y.
     Sept. 6, 2006) (holding that survey "which focused [on] an earlier version of the sales aid,
22   is completely irrelevant to the sales aid currently in use"); *Am. Express Travel-Related*
     *Servs. Co. v. MasterCard Int'l Inc.*, 776 F. Supp. 787, 790 (S.D.N.Y. 1991) (holding that
23   consumer survey based on earlier version of commercial "does not prove that the new
     commercial implicitly misleads consumers nor does it raise serious questions going to the
24   merits to make them a fair ground for litigation").

25   [11] The district court in the prior *Merisant* litigation over Splenda advertising declined to
     hold, on summary judgment, that Merisant's packaging surveys were not probative of
26   whether other Splenda advertising is potentially confusing. *Merisant v. McNeil*, Civ. A.
     No. 04-5504, 2007 WL 707359, at *15 (E.D.Pa. March 2, 2007). Rather, the court left it
27   for the jury to determine the extent to which the results of the plaintiff's packaging
     surveys were indicative of consumers' impressions of Splenda advertising as a whole.
28   Contrary to plaintiffs' suggestion in their motion papers, however, McNeil was not
     precluded or limited in any way from questioning the probative value of Merisant's

                                                    - 16 -                    **MCNEIL'S OMNIBUS MIL OPP.**

1    jurors to draw that inference, McNeil certainly should be free to present a counter-

2    argument to the jury that plaintiffs' packaging survey is of limited probative value

3    in assessing whether other Splenda promotions are misleading.

4           Plaintiffs' motion accordingly should be denied.

5    **G.    The "Splen-Duh" Pitch Document Is Probative of**

6           **Counterclaim Defendants' Actual Intent and Should Not Be**

7           **Excluded**

8           Counterclaim defendants seek to keep from the jury a key piece of

9    evidence that demonstrates the true purpose behind the Truth About Splenda

10   campaign: to tarnish the safety record of Splenda.  The evidence indicates that the

11   subject document – a "pitch" by Qorvis Communications to the Sugar Association

12   – was in fact the blueprint for what eventually became the counterclaim defendants'

13   anti-Splenda smear campaign.

14          Counterclaim defendants base their motion on the unsupported

15   assertion that the pitch document differs from the final "approved" version of the

16   campaign in an allegedly material, yet unspecified, manner.  Even if this assertion

17   were correct (which it is not), it provides no basis to exclude what is a critical piece

18   of evidence concerning the counterclaim defendants' deceptive intent.  The pitch

19   document is compelling evidence that counterclaim defendants' petitioning

20   arguments are a sham and that their publicity campaign was nothing other than a

21   willful attempt to disparage the safety of Splenda.  As set forth above, "prejudice"

22   for Rule 403 purposes "does not mean that the defendant's case is merely damaged,

23   for the more probative the evidence is, the more damaging it is apt to be." *United*

24   *States v. Bowen*, 857 F.2d 1337, 1341 (9th Cir. 1988).  Here, although the pitch

25   document is clearly damning to counterclaim defendants' defense, it poses no risk

26   of *unfair* prejudice justifying its exclusion.

27          In September 2004, Richard Masters and Michael Petruzello of Qorvis

28   packaging surveys at trial.

- 17 -

MCNEIL'S OMNIBUS MIL OPP.
CV 04-10077 DSF (RZX)

1420761v.1

1    Communications met with Andrew Briscoe, President and CEO of the Sugar

2    Association, and Daniel Callister, outside counsel to the Sugar Association, to

3    discuss a possible anti-Splenda publicity campaign. *See* Masters Dep. Tr. 22:18-

4    24:15 (Lasky Decl. Ex. 19). At that meeting, Messrs. Masters and Petruzello

5    presented Qorvis's "pitch" for how the anti-Splenda campaign should be run in the

6    form of a presentation entitled "Creating Doubts: Launching the Splen-duh

7    Campaign" (the "Splen-duh Presentation"). *See id.* at 25:20-28:10. The

8    presentation was subsequently presented to the full Board of Directors of the Sugar

9    Association. *See* Bearden Dep. Tr. 117:20-118:17 (Lasky Decl. Ex. 20).

10         In the Splen-duh Presentation, Qorvis sketched out the blueprint for

11    what would later be termed the "Truth About Splenda" campaign. *See* Lasky Decl.

12    Ex. 21 (the Splend-duh Presentation). As counterclaim defendants' own testimony

13    and documents make clear, nearly all of the proposals in the Splen-duh Presentation

14    eventually made their way into the Truth About Splenda campaign:

15       ➢ ***"Create substantial doubt in the public's mind about the safety of***

16    ***Splenda"*** (QORVIS009345): As this Court has recognized, the Splen-duh

17    Presentation identified the first mission of the campaign as undermining consumer

18    confidence in the safety of Splenda. *See* Court's 12/6/07 Order at 2. Mr. Briscoe

19    has reluctantly conceded that "Creat[ing] substantial doubt in the public mind's

20    about the safety of Splenda" was "one aspect of the campaign." Briscoe Dep. Tr.

21    312:21-313:12 (Lasky Decl. Ex. 22). This objective has been confirmed by

22    representatives of the Sugar Association's member companies as well. *See* Bearden

23    Dep. Tr. 121:23-122:7 (Lasky Decl. Ex. 20) (testimony by President and CEO of

24    counterclaim defendant Rio Grande Valley Sugar Growers).

25       ➢ ***"Find and utilize third party advocates to keep the campaign fingerprint***

26    ***free"*** (QORVIS009345): The counterclaim defendants have used their best efforts

27    to pursue an attack campaign that could not be traced back to the sugar industry.

28    When the Truth About Splenda website was first launched, for example, it did not

MCNEIL'S OMNIBUS MIL OPP.
CV 04-10077 DSF (RZX)

1420761v.1

even disclose that it was sponsored by the Sugar Association and its members. *See* Briscoe Dep. Tr. 322:13-18 (Lasky Decl. Ex. 22). Similarly, the counterclaim defendants have sought to use "enviro-type" field operatives to carry out the work of the anti-Splenda campaign "without the Sugar Association's name being tie[d]-in." *See* Lasky Decl. Ex. 23.

> ➤ ***"We'll flog the blogs and message boards with Splenda questions"*** and ***"Grassroots operatives would place [letters to the editor's] asking Splenda questions"*** (QORVIS009355, 9357): Qorvis has posted messages spreading anti-Splenda sound-bytes on internet message boards, *see* Masters Dep. Tr. 176:17-179:12 (Lasky Decl. Ex. 19), and sent letters to editors of newspapers across the country criticizing Splenda, *see id.* at 179:13-182:22. Consistent with Qorvis's suggestion of a "finger-print free campaign," neither the message board postings, nor the letters to the editor, disclosed that they were placed by Qorvis or any of the other counterclaim defendants. *See id.* at 179:7-182:2.

> ➤ ***"Go after the Johnson and Johnson brand. Leapfrog over Splenda and attack Johnson and Johnson"*** (QORVIS009348): Although McNeil Nutritionals, and not Johnson & Johnson, markets Splenda, the "Fact vs. FICTION" section of the Truth About Splenda website includes numerous references to "Johnson & Johnson," and none to McNeil. *See* Lasky Decl. Ex. 24.

> ➤ ***"Expert Petitions to the FDA: The requests would be to re-look at the dangers associated with Splenda"*** (QORVIS009356): The Sugar Association paid $35,000 to the "public interest group" Citizens for Health in connection with the campaign. *See* Briscoe Dep. Tr. 408:18-415:4 (Lasky Decl. Ex. 22). This group filed a petition with the FDA, reviewed by the Sugar Association's lawyers prior to filing, that sought reconsideration of the FDA's approval of sucralose. *See id.* Despite these payments, Citizens for Health did not disclose its ties to the Sugar Association in its FDA petition. *See* Turner Dep. Tr. 256:17-258:12 (Lasky Decl. Ex. 25) (testimony by Chairman of the Board of Citizens for Health that group only

- 19 -

MCNEIL'S OMNIBUS MIL OPP.
CV 04-10077 DSF (RZX)

1420761v.1

1    disclosed Sugar Association's funding in response to specific inquiries).

2          Although plaintiffs contend that "the Sugar Association never adopted

3    this Pitch Document," the foregoing demonstrates that essentially all of the

4    recommendations of the Splen-duh Presentation were ultimately put into effect.

5    Even if that were not the case, however, the presentation should be admitted

6    because it is a critical piece of evidence concerning plaintiffs' actual intent.  The

7    presentation dooms the counterclaim defendants' litigation-inspired contention that

8    the Truth About Splenda campaign was a legitimate effort to petition the

9    government, rather than a wanton effort to disparage the safety of Splenda.  *See*

10   *Kottle v. Northwest Kidney Centers*, 146 F.3d 1056, 1060 ((9th Cir. 1998) (holding

11   that "sham" exception to *Noerr-Pennington* doctrine "involves a defendant whose

12   activities are not genuinely aimed at procuring favorable government action at all").

13   Relatedly, the Splen-duh Presentation will support the jury's finding that the

14   counterclaim defendants affirmatively intended to mislead consumers through

15   conduct of an "egregious" nature and, therefore, that they should bear the burden of

16   disproving consumer deception.  *See, e.g., Johnson & Johnson-Merck Consumer*

17   *Pharms. Co. v. Rhone-Poulenc Rorer Pharms, Inc.*, 19 F.3d 125, 132 (3d Cir.

18   1994).

19         Critically, plaintiffs have built much of *their* affirmative case around a

20   limited number of Splenda positioning concepts proposed by McNeil's outside

21   vendors – *and soundly rejected by McNeil* – that plaintiffs contend are somehow

22   proof of McNeil's allegedly deceptive intent.  For example, in his report, plaintiffs'

23   marketing expert Dr. Itamar Simonson discusses at length a Splenda positioning

24   concept proposed by the outside vendor AcuPoll, and rejected by McNeil, entitled

25   "nothing artificial added."  *See* Lasky Decl. Ex. 26 at 16-21.  Even though Dr.

26   Simonson concedes that McNeil does not "say that nothing artificial is added" in its

27   advertising, he contends that the mere fact that this concept was proposed by an

28   outside vendor somehow evidences that McNeil intended to "present[] Splenda® as

- 20 -                    **MCNEIL'S OMNIBUS MIL OPP.**
                         CV 04-10077 DSF (RZX)

1  natural" *Id.* at 20.  Similarly, in connection with their summary judgment papers,

2  plaintiffs make much of concept work around a concept entitled "Splenda, it's

3  nature done better" that was devised by another one of McNeil's outside vendors

4  prior to the Splenda launch.  *See* Pls.' Summ. Judg. Mot. At 7-8 (docket no. 187);

5  Fox Decl. Ex. 14 (docket no. 189).  The undisputed record reflects that McNeil

6  immediately rejected this concept and informed the vendor that Splenda absolutely

7  could not be advertised in a manner that might mislead consumers into believing

8  that Splenda is natural.  *See, e.g.,* Sandler Decl. ¶ 17 (docket no. 211).

9  Nevertheless, plaintiffs cite to this rejected concept as purported proof of McNeil's

10  deceptive intent.

11        The concepts upon which plaintiffs rely so heavily were prepared by

12  McNeil's *outside* vendors, summarily rejected by McNeil, and bear no relation to

13  the positioning that McNeil ultimately pursued.  *See, e.g.,* Sandler Decl. ¶¶ 16-17

14  (docket no. 211).  In contrast, the Splen-duh Presentation was prepared by Qorvis, *a*

15  *party to this litigation* whose intent is itself at issue, and is a blueprint for the Truth

16  About Splenda campaign.  Counterclaim defendants cannot seriously contend that

17  the former are admissible, while the latter is not.[12]  Their motion should be denied.

**H.    Anne Haudrich's 2003 Presentation Is Not Hearsay and**

**Should Be Admitted**

20        Plaintiffs' final motion *in limine* seeks the exclusion on hearsay

21  grounds of a critical piece of evidence discrediting their allegation that McNeil

22  intentionally marketed Splenda as a natural product.  In July 2003, amid rumors

23  that some of McNeil's competitors were perpetrating a "whisper campaign" to

24  discredit the company and its advertising, McNeil's head of market research, Eric

25  Paul, initiated a project to review and analyze McNeil's internal market research for

---

[12] McNeil respectfully avers that if the Court excludes the Splen-duh Presentation from evidence, plaintiffs similarly should be barred from any references to rejected Splenda concept work, if for no other reason than "what is sauce for the gander must be sauce for the goose." *Harcourt Brace Jovanovich Legal & Prof's Pubs., Inc. v. Multistate Legal Studies, Inc.,* 26 F.3d 948, 952 (9th Cir. 1994).

MCNEIL'S OMNIBUS MIL OPP.
CV 04-10077 DSF (RZX)

1    any evidence that consumers perceived Splenda as "natural" or were otherwise

2    confused about its essential properties.  Mr. Paul tasked his senior market research

3    manager, Anne Haudrich, with this responsibility.  A month later, after a

4    comprehensive review of McNeil's market research, Ms. Haudrich compiled an

5    assessment of her findings that she entitled "Consumer Perceptions About Splenda"

6    (hereinafter the "Haudrich Report" or the "Report").  *See* Haudrich Dep. Tr.

7    245:15-246:2 (Lasky Decl. Ex. 27); Paul Dep. Tr. 189:22-190:14 (Lasky Decl. Ex.

8    28); Haudrich Report (Lasky Decl. Ex. 29).  The Haudrich Report is a crucial part

9    of McNeil's defense.  First, it rebuts plaintiffs' repeated assertions that McNeil

10   "ignored," "buried," or "whitewashed" internal evidence of consumer confusion.

11   Second, and relatedly, the report confirms that McNeil's internal market research

12   gave no indication that consumers believed that Splenda contains sugar or is a

13   natural product.  Although plaintiffs contend otherwise, McNeil's reliance on the

14   Report to prove these points does not run afoul of the hearsay rule.

15          ***First***, McNeil clearly may offer the report as evidence of its good

16   intent.  It is well settled that when a plaintiff charges a defendant with acting in bad

17   faith or otherwise puts its intent at issue, evidence demonstrating the defendant's

18   good faith should be admitted over a hearsay objection.  Such evidence goes not to

19   the truth of the matter asserted, but rather to a party's state of mind and intent,

20   which is a permissible, non-hearsay use.  *See, e.g., United States v. Moran*, 482

21   F.3d 1101, 1110-11 (9th Cir. 2007), *superseded in part on other grounds,* 493 F.3d

22   1002 (9th Cir. 2007) (exclusion of testimony and evidence relevant to defendant's

23   good faith was reversible error "because the district court erroneously excluded . . .

24   [the] testimony as hearsay . . . and because this testimony would have comprised a

25   critical element of the [defendants'] good faith defense"); *McEuin v. Crown Equip.*

26   *Corp.*, 328 F.3d 1028, 1039 (9th Cir. 2003) (O'Scannlain, J., concurring in part and

27   dissenting in part) (exclusion, on hearsay grounds, of evidence tending to establish

28   defendant's good faith should have compelled a new trial); *see also* 2 McCORMICK

- 22 -

MCNEIL'S OMNIBUS MIL OPP.
CV 04-10077 DSF (RZX)

1   ON EVID. § 249 (6th ed.); *Fester v. Farmer Bros. Co.*, 49 Fed. Appx. 785 (10th Cir.

2   Oct 17, 2002) (holding that that exclusion of an internal investigative report was

3   reversible error because that report was necessary to rebut the plaintiff's allegations

4   of bad faith).

5          Time and again throughout this litigation, plaintiffs have accused

6   McNeil of acting in bad faith by allegedly ignoring or suppressing internal evidence

7   that consumers allegedly are confused by Splenda advertising.  The Haudrich

8   Report, and the story of its preparation, directly rebut those charges.  Immediately

9   upon hearing that its ads were being criticized, McNeil endeavored to learn whether

10  there were any indications in its internal surveys that consumers misunderstood

11  Splenda advertising.  After an extensive and thorough investigation, the results of

12  which were transmitted to the company's top executives, McNeil concluded that

13  there were no material problems with its ads.  Thus, the Report constitutes

14  admissible evidence of McNeil's good-faith determination that, notwithstanding

15  criticism by its competitors, changes to its advertising were unnecessary.

16         ***Second***, the Haudrich report is admissible because it contains prior

17  statements by Ms. Haudrich that are consistent with her anticipated trial testimony

18  that McNeil's internal market research demonstrates that consumers are not misled

19  by Splenda advertising.  Pursuant to Rule 801(d)(1)(B), such statements are

20  admissible over a hearsay objection if the declarant testifies at trial and the

21  statement is "consistent with the declarant's testimony and is offered to rebut an

22  express or implied charge . . . of recent fabrication or improper motive or

23  influence."  Fed. R. Evid. 801(d); *see also United States v. Washington*, 462 F.3d

24  1124 (9th Cir. 2006).

25         Plaintiffs have repeatedly argued in this matter that Ms. Haudrich and

26  other McNeil employees have fabricated their interpretation of the company's

27  internal research for purposes of this litigation.  Indeed, that is one of plaintiffs'

28  arguments for not allowing the Haudrich Report into evidence – because it is a

MCNEIL'S OMNIBUS MIL OPP.
CV 04-10077 DSF (RZX)

1   "presentation prepared ... for the sole purpose of covering up past evidence

2   demonstrating the consumers believed Splenda to be natural." *See* Pls.' Mem. at

3   13.  In fact, plaintiffs' entire case is premised on this alleged sweeping conspiracy

4   at McNeil. Ms. Haudrich's report, which will likely be identical in all material

5   respects to her trial testimony, was written over a year before plaintiffs even filed

6   this case.  It is therefore admissible to rebut any suggestion that she recently

7   fabricated her testimony. *See Tome v. United States,* 513 U.S. 150, 158 (1995)

8   (prior consistent statements are admissible under Rule 801(d)(1)(B) if they were

9   made before the motive to fabricate or lie arose).

10        ***Third***, and contrary to plaintiffs argument, the Report is admissible

11   under the business records exception.  Federal Rule of Evidence 803(6) provides

12   that "a memorandum, report, record, or data compilation made at or near the time . .

13   . by a person with knowledge" is admissible over a hearsay objection if it was made

14   "by a person with knowledge" in the regular course of business and it was the

15   "regular practice" to make such a document. *See* Fed. R. Evid. 803(6); *see also*

16   *United States v. Ray,* 930 F.2d 1368, 1370 (9th Cir. 1990).  The Haudrich Report

17   easily meets this standard.  As a senior market researcher at McNeil, Ms.

18   Haudrich's regular duties include the compilation and interpretation of internal

19   survey data as well as the preparation of related presentations for senior

20   management.  She drafted the Report in question as part of those duties and did so

21   over a year before Plaintiffs sued McNeil. *See* Haudrich Dep. Tr. 245:15-246:2

22   (Lasky Decl. Ex. 27); Paul Dep. Tr. 189:22-190:14 (Lasky Decl. Ex. 28).  Further,

23   there is no dispute that she is a "person with knowledge" of the underlying data.

24   Accordingly, this is precisely the type of document Rule 803(6) permits to be

25   received in evidence. *See Sea-Land Service, Inc. v. Lozen Intern., LLC.,* 285 F.3d

26   808, 819 (9th Cir. 2002).

27        Although plaintiffs assert that the Report "was not made in the regular

28   course of business" but rather was a response to "impending . . . litigation", *see*

- 24 -

MCNEIL'S OMNIBUS MIL OPP.
CV 04-10077 DSF (RZX)

1    Pls.' Mot. at 13, they offer no facts in support of this argument.  The Report on its

2    face is entirely business-related and, as described above, the relevant witnesses

3    have testified under oath concerning its business purpose.  Further, no lawyer was

4    involved in the creation of the document.  Ms. Haudrich testified at her deposition

5    that she prepared the Report at the request and direction of Mr. Paul, who then was

6    McNeil's head of market research.  *See* Haudrich Dep. Tr. 245:15-246:2 (Lasky

7    Decl. Ex. 27).  Mr. Paul, in turn, testified that no one asked him to prepare the

8    Report and that he alone determined the project should be undertaken.  *See* Paul

9    Dep. Tr. 189:22-190:14 (Lasky Decl. Ex. 28).  Plaintiffs offer zero evidence that

10   the Report was created in connection with future litigation.  As such, their hearsay

11   argument must fail.

## Conclusion

12   

13          For the foregoing reasons, McNeil respectfully requests that the Court

14   deny all of plaintiffs' motions *in limine*.

15   

16   Dated:        December 17, 2007

17                              RICHARD B. GOETZ
                               DIANA M. TORRES
18                              CARLOS M. LAZATIN
                               O'MELVENY & MYERS LLP
19
                               STEVEN A. ZALESIN
20                              CLAY J. PIERCE
                               KARLA G. SANCHEZ
21                              PATTERSON BELKNAP WEBB &
                               TYLER LLP
22
23                              By: *Karla G. Sanchez*
24                                   Karla G. Sanchez

25                              *Attorneys for Defendants McNeil-PPC, Inc.*
                               *and McNeil Nutritionals, LLC*
26
27
28
                                - 25 -          **MCNEIL'S OMNIBUS MIL OPP.**
                                               CV 04-10077 DSF (RZX)